540 P.2d 263

George A. SUCHAN, Plaintiff-Appellant,

v.

HENRY'S FARM SALES, INC., et al.,
Defendants-Respondents.

No. 11607.

Supreme Court of Idaho.
Sept. 10, 1975.

Donald R. Chisholm, Goodman, Duff & Chisholm, Rupert, for plaintiff-appellant.

J. Robert Alexander, Benoit, Alexander & Harwood, Twin Falls, for defendants-respondents Henry's Farm Sales, Inc., Western Farm Service, Inc., and Shell Oil Co.

Claude V. Marcus, Marcus & Marcus, Boise, for defendant-respondent Forrest E. McCarty.

McFADDEN, Justice.

Plaintiff-appellant George Suchan commenced this action against defendants-respondents, Henry's Farm Sales, Inc. and its parent corporation, Shell Oil Company, and its wholly owned subsidiary, Western Farm Service (all referred to herein as Henry's) and Forrest E. McCarty, a custom fertilizer applicator. Trial was had to a jury. A verdict was rendered against plaintiff and in favor of all defendants and judgment was rendered in conformity with the verdict. Plaintiff timely moved for judgment notwithstanding the verdict and in the alternative for a new trial and submitted objections to defendant Henry's memorandum of costs. Plaintiff appeals from the judgment and from the order denying his motions and objections signed February 11, 1974.

The following facts were not disputed at trial. In 1972 plaintiff Suchan farmed approximately 1120 acres in Minidoka County in the vicinity west of Paul, Idaho. The present action involves approximately 305 acres planted with registered Springfield wheat and 115 acres planted with mixed grain consisting of 85% Steveland barley and 15% Springfield wheat.

Plaintiff had the soil on this property tested in the fall of 1971 by an independent testing laboratory to determine the fertilizer needs of the land. On the basis of these tests the laboratory prepared written nutrient recommendations for the soil to obtain an estimated yield of grain of 100 bushels per acre.

The plaintiff discussed with representatives of Henry's Farm Sales, Inc., the price and amount of fertilizer necessary to meet these recommendations and also for a yield goal of 100 bushels per acre. He then contracted with Henry's for the purchase and application of fertilizer, purchasing the amount of fertilizer necessary to obtain a yield goal of 120 bushels per acre according to the nutrient recommendations for his soil. Henry's employed defendant McCarty to spread the fertilizer.

In the first part of April, 1972, McCarty began spreading the fertilizer. The spreading was done with a "fan bed" type fertilizer applicator. With this type of applicator a metered amount of fertilizer is fed to two motor driven "fans" or "spinners". These fans rotate so as to throw the fertilizer out to each side. When both fans are turning, the applicator spreads about a 48 foot wide swath at a time. The planting of the grain occurred soon after this and was completed by May 11, 1972. Irrigation was started the 19th of May. Approximately twenty days later plaintiff noticed that the crop had begun to show differences in growth and color. The variances appeared as a pattern of streaks of light green or yellow wheat which was shorter and less dense than the rest of the crop which was described as thick and lush.

At plaintiff's insistence, representatives of Henry's viewed his crop. Dr. Dale Stukenholtz, an agronomist, was then employed on behalf of Henry's to examine plaintiff's fields in October of 1972. Stukenholtz, who had been working nearby, had noticed the uneven growth of the crop during the summer. That fall he examined and measured the entire crop. He found the average distance from peak to peak or valley to valley of the streaks to be 22 feet. In addition, Stukenholtz took soil samples from plaintiff's land and grain samples from the crops and sent them to a private independent laboratory for analysis. On the basis of the laboratory analysis contained in its report and his own testing and observation, Stukenholtz prepared a written report in the form of a letter to

Henry's which contained the laboratory analysis and his conclusions as to the reasons for the streaking in the crop. This report was followed by a supplemental letter, all addressed to Henry's. These documents were consolidated as exhibit 4 during trial. In summary, Stukenholtz concluded the streaking was due to uneven application of the fertilizer. He concluded this was caused by a malfunction in the spinners on McCarty's applicator. Prior to trial, Henry's admitted, in response to a request for admission of the genuineness of a document, pursuant to I.R.C.P. 36(a), that the reports were made on behalf and at the request of Henry's and that the documents were genuine.

In his complaint plaintiff alleges a lack of uniformity in his crop and that there was a reduced quality and yield which condition was caused by the improper application of fertilizer by defendant McCarty. His complaint is in two counts, one for breach of contract and one for negligence. The separate answers of the defendants, Henry's and McCarty, generally deny plaintiff's allegations and assert his own contributory negligence in defense and in mitigation of damages. Defendants Henry's and McCarty each assert cross-claims against the other as well.

On appeal, plaintiff makes four assignments of error. First, he claims the court erred when it allowed each of the defendants, i. e., Henry's and McCarty, four peremptory challenges during jury selection. Second, the plaintiff claims the court erred when it edited certain portions of exhibit 4 before admitting it into evidence. Third, plaintiff claims error in the court's refusal to allow exhibit 4 to be admitted during Dr. Stukenholtz's testimony or to allow him to use it as a basis for his opinions. Last, plaintiff claims that the evidence was such that it required judgment notwithstanding the verdict or in the alternative, a new trial. In addition, plaintiff makes certain objections to defendant Henry's cost bill. We shall deal with these in order.

I.C. § 10–202, in effect at the time of trial, provided that "[e]ach party is entitled to four peremptory challenges." Plaintiff proposes that the defendants in this case should have shared four challenges and if they could not agree on the exercise of the four challenges the proper procedure would be to divide them. The record fails to disclose any objection to this procedure by plaintiff during the jury selection. Therefore we cannot consider the court's alleged error, where plaintiff did not object to it at trial. "In general, failure to lodge timely objection to the manner in which a jury is being impaneled constitutes waiver of the irregularity." *Finck v. Hoskins*, 94 Idaho 524, 526, 492 P.2d 936, 938 (1972).

Plaintiff argues that should there be a retrial of this case, the Idaho law should be clarified on this point. Since we affirm, this argument is moot. Nevertheless, we should point out that a retrial would fall under I.R.C.P. 47(j), revised January 1, 1975, which supplants I.C. § 10–202 (now repealed). That rule has clarified the former law and reads in part:

"In the event there are coparties as plaintiffs, defendants, or otherwise, the court shall determine the degree of conflict of interest, if any, between or among the coparties and shall in its discretion allocate the full number of peremptory challenges authorized by law to each of the coparties, or apportion the authorized peremptory challenges between and among the coparties, or in its discretion allocate an equal or unequal number of peremptory challenges to each of the coparties, but not to exceed for any coparty the authorized number of peremptory challenges per party as provided by law."

Plaintiff's next assignments of error concern the written reports prepared by Dr. Stukenholtz who was called by plaintiff and qualified as an expert witness, an agronomist. At trial plaintiff questioned Dr. Stukenholtz concerning the

contents of his written report to Henry's. The court sustained objections to questions concerning the contents of the soil and grain analysis done for Stukenholtz by the independent laboratory. The court refused to allow Dr. Stukenholtz to use the test results in forming his opinion as to what was the cause of the uneven growth and color in plaintiff's crop. Although the court, while Dr. Stukenholtz was testifying, refused to allow the documents into evidence, after further argument, the court did admit the documents into evidence prior to the case being submitted to the jury. The trial court, however, edited out portions of the report which referred directly to defendant McCarty and particularly references that the streaking of the crops was caused by too low r.p.m. of the spinners. The plaintiff claims as error the courts' refusal to let into evidence the edited portions of the reports and its refusal to allow Dr. Stukenholtz to use evidence of the soil tests in testifying as to the cause of the streaking.

In editing these documents the trial court sought to balance the right of the plaintiff to have the documents in evidence with the right of defendant McCarty not to be prejudiced by materials in the report with which he had nothing to do. Indeed, the transcript reveals that the initial suggestion that the portions of the reports referring to McCarty's fault be edited out came from plaintiff's counsel. Plaintiff's counsel likewise made no objection at the time the trial court edited out these portions. Under these circumstances, it would be improper for plaintiff to claim this as error on appeal.

Plaintiff claims that failure to allow the reports into evidence at the time Dr. Stukenholtz testified "decimated" the expert's testimony. The later admission of the documents, plaintiff claims, failed to correct the prejudicial result "because it came in without the explanatory testimony of the agronomist."

Inasmuch as this exhibit was ultimately admitted into evidence we need not decide

whether it was admissible. Even if admissible, plaintiff was not sufficiently prejudiced by its late admission to require reversal. Despite the court's initial refusal to allow in the soil and grain analysis, Dr. Stukenholtz was allowed to give his opinion "that certain parts of that field received more fertilizer than other parts." The reports, once admitted, were sufficiently self-explanatory that the absence of Dr. Stukenholtz's "explanation" would not materially prejudice plaintiff.

■ Lastly, plaintiff claims the evidence was such that the trial court abused its discretion when it failed to grant his motion for a judgment notwithstanding the verdict and in the alternative for a new trial. We find this assignment to be without merit. In Dr. Stukenholtz's opinion plaintiff's 1972 crop yield was reduced by approximately 15 bushels per acre by reason of the streaking in the grain. Plaintiff concurred in this opinion. Defendants offered evidence, on the other hand that all of the fertilizer applied was consumed by the 1972 crop. Defendants argue that any reduction in yield could not result from non-uniform application of fertilizer and that the lush portions of the crop merely yielded more than normal while the shorter grain didn't yield as much as normal. There was testimony that even the lush portions of the grain were not over fertilized. In light of this conflicting testimony it cannot be said the court abused its discretion in failing to grant a judgment notwithstanding the verdict or a new trial.

■ One final matter is raised by plaintiff's brief. Plaintiff claims that under I.R.C.P. 54(d) the costs of depositions not used at trial are not taxable in Idaho. He asserts the court erred when it refused to sustain his objections to defendant Henry's cost bill on the sole ground the challenged deposition was not introduced at trial. *Rosenberg v. Toetly,* 94 Idaho 413, 489 P.2d 446 (1971), is dispositive. That case was decided under former I.C. § 12-113 which is substantially similar to the I.

R.C.P. 54(d).[1]  In that case this court stated:

"Nor does I.C. § 12–113 require depositions to be offered in evidence before their costs may be taxed.  That section requires only that the cost bill submitted by the prevailing party aver that the items claimed are correct and were necessarily incurred in the action.  Respondent's attorney complied with these requirements.  The trial court committed no error in denying appellant's objection thereto."  94 Idaho at 421, 489 P.2d at 454.

The issue as to the necessity of incurring the costs of the deposition was submitted to the trial court, which ruled against the plaintiff.  Here, we find no error in that regard.

The judgment in favor of the defendants and the order denying plaintiff's motion for judgment notwithstanding the verdict or for new trial and granting defendants their costs is affirmed.  Costs to respondents.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, District Judge (retired), concur.

1.  Subsequent to the entry of the order denying plaintiff's objection to costs, the Idaho Rules of Civil Procedure were amended.  The revised I.R.C.P. 54(d)(5) is substantially similar to I.R.C.P. 54(d).