854 P.2d 259

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven KNOWLTON, Defendant–Appellant.**

**No. 19658.**

Supreme Court of Idaho,
Boise, February 1993 Term.

June 10, 1993.

Nicholas T. Bokides, Weiser, for defendant-appellant.

Larry EchoHawk, Idaho Atty. Gen., Michael Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson argued.

TROUT, Justice.

Steven Knowlton appeals from an order revoking his probation and ordering him to serve an indeterminate ten-year sentence for the rape of his fourteen-year old daughter. On appeal, Knowlton contends the trial judge was biased and should have been disqualified as a result of the judge's participation in the Governor's Task Force for Children at Risk, the prosecutor engaged in misconduct at the probation revocation hearing and the trial court abused its discretion in orally denying a motion for a reduction in sentence.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In 1984, Knowlton pleaded guilty to raping his fourteen-year old daughter. The district judge, Roger Williams, granted Knowlton a withheld judgment and placed him on probation for five years. The terms of the probation included a one-year jail sentence with work release, treatment in a sex abuse program and no contact with his children or step-daughter without the permission of his probation officer. The probation order further provided that Knowlton "shall not marry or have sexual relations with his step-daughter...."

Knowlton was thereafter summoned before the trial court on a series of probation

violation proceedings. The first probation violation occurred approximately three months after sentencing and involved Knowlton's contact with his step-daughter. A second probation violation proceeding was instigated in 1986 and a hearing was held on September 16, 1986, before district judge, Dennis Goff. At this hearing, Knowlton admitted several violations including contacting his daughters without authorization, repeatedly lying to his probation officer, failing to maintain a job and not participating in group treatment. Judge Goff revoked Knowlton's probation, imposed a judgment of conviction and sentenced Knowlton to an indeterminate ten-year term. The trial court also retained jurisdiction for 120 days.

On December 30, 1986, Knowlton filed a motion for reduction of sentence pursuant to I.C.R. 35 (Rule 35 motion). On January 15, 1987, the trial court temporarily suspended its judgment of conviction and scheduled a hearing for March 6, 1987. At the hearing, Judge Goff denied Knowlton's Rule 35 motion but reinstated Knowlton's probation for a period of ten years. The terms of the probation forbid Knowlton from having any contact with his minor children without the permission of his probation officer and sexual abuse treatment provider.

A third probation violation proceeding was commenced in 1987 but later dismissed. In 1991, the probation violation proceeding which is the subject of this appeal occurred. At this proceeding, Knowlton admitted having intercourse with his youngest daughter on two occasions. On the basis of Knowlton's admitted probation violation, Judge Goff revoked Knowlton's probation and ordered him to serve the indeterminate ten-year sentence previously imposed.

On appeal, Knowlton contends: (1) Judge Goff was biased and should have been disqualified because of his participation in the Governor's Task Force for Children at Risk; (2) the trial court abused its discretion by revoking his probation; (3) the prosecutor engaged in misconduct at the probation revocation hearing which requires reversal of the order revoking probation; and (4) the trial court abused its discretion by orally denying a motion for a reduction of sentence without allowing Knowlton to present any information or argument.

## II.

## THE TRIAL JUDGE'S PARTICIPATION IN THE TASK FORCE DID NOT DISQUALIFY HIM FROM PRESIDING OVER THE PROBATION REVOCATION HEARING

Knowlton argues, for the first time on appeal, that he was prejudiced by Judge Goff's participation in the Governor's Task Force for Children at Risk. Knowlton did not learn of Judge Goff's appointment to the task force until after the probation revocation hearing. He now contends that Judge Goff's membership on the task force rendered it impossible for him to function in an impartial fashion. Knowlton also directs us to portions of the record which purportedly indicate Judge Goff's bias or prejudice against him. .

The longstanding general rule of this Court, as recently noted in *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991), is that we will not consider issues that are presented for the first time on appeal. However, in the case of fundamental error in a criminal case, this Court will consider an alleged error raised on appeal even though no objection was made at trial. *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). Thus we first must assess whether the error would be fundamental if there were error. We have adopted the following definition of fundamental error:

Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*Id., citing Smith v. State,* 94 Idaho 469, 475 n. 13, 491 P.2d 733, 739 n. 13 (1971).

In *State v. Kenner,* 121 Idaho 594, 596–97, 826 P.2d 1306, 1308–09 (1992), we refused to consider the defendant's contention "that he was deprived of his constitutional right to a fair trial because the magistrate judge was biased or prejudiced against him" when this issue was not raised in the trial court below. This Court refused to consider the issue as fundamental error since, even assuming the defendant had requested the magistrate judge disqualify himself and the magistrate had denied that request, any error in so doing would not go to the very foundation of the case or defendant's rights, or take from the defendant a right essential to his defense.

█ *Kenner* is controlling in the present case to the extent Knowlton is contending the trial judge was actually biased or prejudiced against him. In *Kenner,* the magistrate judge presided over a trial in which the jury found the defendant guilty of two of three pending misdemeanor charges. *Id.* at 595–96, 826 P.2d at 1307–08. We refused to consider, for the first time on appeal, the defendant's contention that the magistrate judge was biased or prejudiced against him. *Id.* at 597, 826 P.2d at 1309. A criminal defendant seeking to disqualify a trial judge for cause must bring a motion to disqualify pursuant to I.R.C.P. 40(d)(3) and I.C.R. 25(b). *See State v. Lankford,* 113 Idaho 688, 699–700, 747 P.2d 710, 721–22 (1987), *vacated on other grounds, Lankford v. Idaho,* 486 U.S. 1051, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988). We will not consider Knowlton's contention that the trial judge was biased or prejudiced against him in the absence of a timely motion to disqualify.[1]

█ Left unresolved by *Kenner* is whether Judge Goff had an *affirmative duty* to recuse himself from the instant case because as Knowlton contends, Judge Goff's membership on the task force rendered it impossible for him to function in an impartial fashion. The Code of Judicial Conduct, originally adopted by this Court on September 27, 1976, provides that: "Judges should disqualify themselves in proceedings in which their impartiality might reasonably be questioned or where personal knowledge of disputed evidentiary facts might reasonably affect their impartiality in the proceeding." Code of Judicial Conduct, Canon 3(C)(1). Interposed in the above requirement is Canon 4 which provides: "Subject to the proper performance of judicial duties, judges may engage in activities to improve the law, the legal system, and the administration of justice if in doing so the judges do not cast doubt on their capacity to decide impartially any issue that may come before them."

In the present case, Judge Goff served on the Governor's Task Force for Children at Risk at the request of the governor. Executive Order 88–20, establishing the task force, provides for the appointment of a district court judge, a magistrate judge, a prosecuting attorney, a public defender, a pediatrician, a parent or parent group representative, a mental health counselor and a representative of the Department of Corrections' Probation and Parole Division, among others, to the task force. The task force's responsibilities, as set forth in the executive order, include:

1. To work in cooperation with appropriate state and local entities to establish the statewide coordination of an effective, multiagency system of investigation of all reports of child abuse and neglect, including the creation of a written system of protocol for all such investigations conducted in the state;

2. To work toward the goal of criminal prosecution of all substantiated cases of criminal abuse and/or neglect;

3. To monitor the disposition of all criminal cases of child abuse and neglect filed throughout the State of Idaho;

4. To work toward the goal of ensuring necessary and effective psychological

---

1. We note that Judge Goff's membership in the task force was a matter of public record at the time of the probation revocation hearing. Thus, our holding in the instant case is consistent with the longstanding rationale behind not considering issues raised for the first time on appeal. *See Smith v. Sterling,* 1 Idaho 128, 131 (1867).

treatment for all abused and neglected children;

5. To be informed about effective programs and systems in place throughout the country in order that Idaho may be among the nation's leaders in the field of child protection;

6. To provide an advocacy function in promoting legislation pertaining to services and laws affecting abused and neglected children; and

7. To report to the Governor on June 30 of each year, or at any other time deemed necessary by either the governor or the Task Force, and to provide to the Governor a written report on June 30 of each year on the Task Force's work and its impact on children.

We can find nothing in the makeup of the task force or in the task force's enumerated responsibilities which would cast doubt on Judge Goff's capacity to conduct impartially a probation revocation hearing involving child abuse. The Task Force for Children at Risk is a diversified task force with representatives from nearly every facet ·of the legal system including a public defender and a member of the Probation and Parole Division of the Department of Corrections. The enumerated responsibilities contain no specific agenda with respect to the treatment, probation or punishment of convicted child abusers. On the contrary, the focus of the task force is on the protection and treatment of abused and neglected children. We do not believe this equates to Judge Goff acting as an "advocate," as Knowlton suggests, against "persons situated in [Knowlton's] shoes."

■ A judge does not have an affirmative duty to withdraw from cases which merely tangentially relate to the judge's participation in an organization or committee. To hold otherwise would deprive the

citizens of this state of the knowledge and experience which a judge brings to groups designed to improve the legal system. Similarly, our citizenry would also suffer if we discouraged our judiciary from heightening their knowledge and awareness of legal issues through participation in groups such as the Governor's Task Force for Children at Risk. As noted by the Washington Court of Appeals:

> The people of this state will be best served by a legal system which encourages judges to enhance their own and others' awareness of legal issues and develop their legal knowledge and skills. Without any support for his argument, [appellant] confuses a judge's efforts to improve the legal system with an assumption of biased advocacy which prevents a judge from exercising the independent judgment and consideration required in the exercise of the judge's professional responsibilities.

*State v. Carlson,* 66 Wash.App. 909, 833 P.2d 463, 464–65 (Wash.Ct.App.1992).

Accordingly, we hold that it was proper for Judge Goff not to disqualify himself from the probation revocation hearing.[2]

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REVOKING KNOWLTON'S PROBATION

Knowlton contends the trial court abused it's discretion by revoking his probation. We disagree.

■ Knowlton admitted he violated his probation by twice committing incest. This followed a series of prior probation violations, two of which involved improper contact with his children. After a probation violation has been proven, the decision as to whether to revoke probation and order a

---

**2.** *See also United States v. Glick,* 946 F.2d 335 (4th Cir.1991) (on an appeal brought by the government after the trial court departed from the sentencing guidelines, defendant's motion to disqualify an appellate judge, who served as chairman of the commission which recommended the guidelines, was denied because mere participation in the commission provided no reasonable basis for questioning the judge's impartiality); *United States v. Payne,* 944 F.2d 1458 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992) (trial judge's participation in commission on pornography did not necessitate recusal from conducting a trial for carnal knowledge of a female under the age of 16 despite commission's finding that there is a relationship between child pornography and child abuse).

previously imposed sentence is vested in the sound discretion of the trial court. *State v. Marks,* 116 Idaho 976, 783 P.2d 315 (Ct.App.1989). We cannot say based upon Knowlton's admitted probation violations that the trial court abused its discretion in revoking Knowlton's probation.

## IV.

## THE PROSECUTOR'S CONDUCT AT THE PROBATION REVOCATION HEARING DOES NOT REQUIRE REVERSAL OF THE ORDER REVOKING PROBATION

█ Knowlton argues the prosecuting attorney made a number of remarks at the probation revocation hearing that had no basis in the record and which were directed at inflaming the passion or prejudice of the trial judge. In support of this argument, Knowlton principally relies on *State v. Spencer,* 74 Idaho 173, 183–84, 258 P.2d 1147, 1154 (1953), in which the Court granted the defendant a new trial after determining the prosecuting attorney's comments, which were not supported by the evidence, amounted to misconduct calculated to inflame the minds of jurors and arouse prejudice or passion against the accused.

In *Spencer,* a jury found the defendant guilty of second degree murder in connection with the shooting of a man who, while hunting on defendant's property, allegedly fired two shots into the defendant's bedroom where defendant and his wife slept. 74 Idaho at 176–77, 258 P.2d at 1149. During closing arguments, the prosecuting attorney referred to the following which were not supported by the evidence: (1) a gruesome murder in which a young boy's body was found in the same county prior to the subject shooting; (2) five killings which had taken place since the jurors first took their oath; (3) the fact that defendant was quick to get his prints on a gun and later stated he never had his hands on the gun; and (4) the contents of a log cabin owned by the defendant despite the trial court's ruling that the contents of the cabin were inadmissible. *Id.* at 182–83, 258 P.2d at 1153. In addition, the prosecuting attorney

stated in his closing argument that the jurors would have to "[r]un the gauntlet of your friends when you get to the street if you free the defendant" and that the jurors would be "afraid to listen to your radio and read your newspapers." *Id.* at 183, 258 P.2d at 1153.

Based on the foregoing, the Court held:

> In the instant case the record does not show conclusively the guilt of [defendant], but, on the contrary, such issue is debatable and the jury might well have reasonably entertained doubt as to [defendant's] guilt. Clearly the remarks of the associate prosecuting attorney in his closing argument constituted misconduct ... and such misconduct requires a reversal of the judgment in this case.

74 Idaho at 184, 258 P.2d at 1154.

We are presented with a markedly different set of facts in the present case. Knowlton assigns as error certain comments made by the prosecutor at the probation revocation hearing. Knowlton contends the prosecutor should not have commented on Knowlton's alleged conduct which formed the basis for the 1987 probation revocation proceeding since this proceeding was dismissed. Knowlton also objects to the comments by the prosecutor concerning his personal experience with Knowlton and his family.

Unlike *Spencer,* the above comments were made to the trial judge and not to a jury. Knowlton's attorney asked that the trial judge "carefully separate argument from record" and reminded the court that the comments concerning the prosecutor's personal experience with the case and the facts forming the basis for the 1987 probation revocation hearing were not of record. In addition, the trial judge, Judge Goff, had presided over this case since 1986. He was intimately familiar with Knowlton and the facts surrounding this case when he revoked Knowlton's probation on the basis of Knowlton's *admitted* probation violations. The guilt of Knowlton was not debatable, unlike the defendant in *Spencer,* and we cannot say that the comments by the prosecutor could have "inflamed the mind" of

**922**

Judge Goff or had the effect of "arousing prejudice or passion" against Knowlton which would justify reversal of the order revoking probation.

## V.

## THE TRIAL COURT PROPERLY DENIED RULE 35 RELIEF SINCE KNOWLTON HAD PREVIOUSLY FILED A RULE 35 MOTION

Knowlton argues the trial court abused its discretion by summarily denying him Rule 35 relief without allowing him the opportunity to present information in support of a Rule 35 motion. We disagree.

I.C.R. 35, in pertinent part, provides:

Motions to correct or modify sentences under this rule must be filed within 120 days of the entry of the judgment imposing sentence or order releasing retained jurisdiction and shall be considered and determined by the court ... in its discretion; provided, however that *no defendant may file more than one motion seeking a reduction of sentence under this Rule.*

(Emphasis added). Knowlton previously filed a Rule 35 motion in 1986 after the trial court imposed the indeterminate ten-year sentence. At the hearing on March 6, 1987, the trial court denied this motion. Knowlton was not entitled to file another Rule 35 motion and the trial court's comments at the probation revocation hearing that it would not reduce Knowlton's sentence pursuant to Rule 35 were proper.

## VI.

### CONCLUSION

We affirm the order revoking probation and the denial of a motion to reduce the sentence imposed.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and JUDD, District Judge (Pro Tem.) concur.