878 P.2d 776

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ronald D. LEWIS, Defendant–Appellant.**

No. 20404.

Supreme Court of Idaho,
North Idaho Term, April 1994.

July 1, 1994.

Rehearing Denied Aug. 24, 1994.

Park & Rogers Law Offices, St. Maries, for appellant. David Bryant Rogers argued, St. Maries.

Larry EchoHawk, Atty. Gen., and Douglas A. Werth, Deputy Atty. Gen., argued, Boise, for respondent.

BISTLINE, Justice.

Defendant–Appellant, Ronald D. Lewis (Lewis), was convicted of lewd conduct with a minor in violation of I.C. § 18–1508. He was sentenced to prison for fifteen years to life and took this appeal.

## BACKGROUND AND PRIOR PROCEEDINGS

On or about June 30, 1989, Lewis invited a seven-year-old girl into his trailer home for a soda pop. When she entered, he chased her around the inside of the trailer, and then kissed the girl's vaginal area. The young girl's brother was present for part of the assault and attempted to stop Lewis. When that proved unsuccessful, the boy called for help. At that point, Lewis told the two children that if they ever told anyone he would hurt their family.

Two years later, the young girl reported the assault by Lewis. Lewis was charged by information with lewd conduct with a minor, in violation of I.C. § 18–1508. Lewis pleaded not guilty and the matter was scheduled for jury trial.

Prior to trial, the State filed a motion in limine and supporting brief pursuant to

I.R.E. 404(b), seeking to introduce evidence of two other acts of lewd conduct with minors for which Lewis had been convicted as evidence of Lewis' intent.

On September 11, 1992, the district court held a hearing on the State's motion in limine. The Court granted the State's motion in limine in a written order. Although the minutes of that hearing are included in the record, the transcript of the hearing was not included because Lewis' attorney on appeal failed to designate it as part of the record in his Notice of Appeal.

On September 22, 1992, the trial began and the parties commenced voir dire to select a jury. During the prosecutor's voir dire, he asked similar questions of three different jurors who each said they knew or had known children who had been sexually abused. The prosecutor inquired whether the jurors thought, based on their own experiences with child sexual abuse, that a child victim would always contemporaneously report the abuse. Each juror responded that such timely reporting would probably be unlikely. Defense counsel did not object to the prosecutor's questions or the prospective jurors' responses. The trial judge did not interfere with the prosecutor's line of questioning.

Defense counsel used eight of the allotted ten peremptory challenges without exercising a peremptory challenge to remove any of the three jurors who had been questioned by the prosecutor. The three jurors above-mentioned sat on the jury that ultimately convicted Lewis.

At trial, both the victim and her brother testified that Lewis had kissed the victim's vaginal area. Because the parents of the two girls that Lewis had previously been convicted of molesting refused to let their children testify a second time, the transcript of their testimony from the earlier trial was read into evidence by a high school girl. The judge and attorneys each read their respective roles. Among other things, through the transcribed testimony the children accused Lewis of digitally penetrating them. One of the girls testified that Lewis had threatened her if she disclosed the abuse. The abuse of the two girls whose prior testimony was read

occurred in 1989, a few months after the abuse alleged in the present case. The jury was instructed of the limited purposes for which the evidence was presented and could be considered.

Lewis took the stand in his own defense and testified that he had never digitally penetrated any person. The prosecution then called Lewis' daughter in rebuttal who testified that Lewis had sexually abused her as a child, including digital penetration. Lewis took the stand a second time. Initially he denied his daughter's testimony, but subsequently he confessed to having touched his daughter's vaginal area.

Lewis was convicted, sentenced to fifteen years to life, and appealed.

## ANALYSIS

**I. Lewis Waived Any Objection To The Prosecutor's Questions In Voir Dire Regarding The Jurors' Knowledge Of Whether Children Immediately Report Sexual Abuse.**

As described above, during voir dire examination, the prosecutor asked questions of three different jurors who each knew children who had been sexually abused. When asked whether they thought children always reported abuse immediately, each juror said, with varying degrees of certainty, that such quick reporting was unlikely.

Despite the fact that Lewis' defense counsel remained silent through all three of the exchanges without making any type of an objection, Lewis now maintains that the following language of I.C.R. 24 obligated the judge to interpose an objection on his behalf:

The voir dire examination shall be under the supervision of the court and subject to such limitations as the court may prescribe in the furtherance of justice and the expeditious disposition of the case. Any question propounded by an attorney to a prospective juror which is not directly relevant to the qualifications of the juror, or is not reasonably calculated to discover the possible existence of a ground for challenge, or has been previously answered,

shall be disallowed by the court upon objection *or upon the court's own initiative.*

Lewis' argument attempts to transform the permissive language of the rule into a mandatory obligation. The rule makes clear that impermissible examination "shall" be disallowed when a timely objection is made. It then goes on to speak in the disjunctive in describing the ability of the court to disallow impermissible examination on its own motion, recognizing the well-established power of the court to control the scope of voir dire. However, nothing in the language of the rule operates to relieve defense counsel of the obligation to object to a question thought to be improper.

In addition to distorting the plain language of the rule, Lewis' construction, if adopted, would give defense counsel in every criminal case an incentive to stay silent during the prosecutor's voir dire in the hope that some objectionable question will escape the attention of the trial judge and provide an issue on appeal. Lewis' argument also overlooks the fact that contemporaneous objections are required primarily to afford the trial court an opportunity to prevent or cure error as it is occurring, not merely to preserve arguments for appeal. We reject Lewis' interpretation in favor of following the clear language of I.C.R. 24 allowing, but not requiring, a trial court to constrain voir dire examination. Therefore, because Lewis failed to timely object below, the argument has been waived.

We further note that our reading of I.C.R. 24 is consistent with our previous holding requiring a contemporaneous objection to an alleged error in the jury selection process. *Suchan v. Henry's Farm Sales, Inc.,* 97 Idaho 78, 80, 540 P.2d 263, 265 (1975) (where a party fails to object to the number of peremptory challenges allotted by the court a waiver is established).[1] *See also Mann v. State,* 749 P.2d 1151, 1157 (Okla.Crim.App. 1988) (where in voir dire defendant failed to object either to prosecutor's question of potential juror or to potential juror's response, waiver established).

Moreover, Lewis also waived his right to object on appeal to the allegedly impermissible questions by failing to exercise all of his ten available peremptory challenges. *See State v. Mitchell,* 104 Idaho 493, 501, 660 P.2d 1336, 1343–44 (1983), *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983) (defendant's failure to use all peremptory challenges, and thereby exclude unacceptable jurors who exposed entire panel to prejudicial information during voir dire, precludes defendant from claiming error on appeal).

The only remaining theory under which this issue would be subject to review on appeal is the fundamental error doctrine. Recently, in *State v. Sarabia,* 125 Idaho 815, 875 P.2d 227 (1994), we concluded that the amount of the defendants' fines did not rise to the level of fundamental error and traced the development of our cases applying the fundamental error doctrine:

> In *Knowlton,* the Court restated the definition of fundamental error:
>
>> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.
>
> [*State v. Knowlton,* 123 Idaho 916, 918, 854 P.2d 259, 261 (1993).]
>
> ....
>
> In *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971), the Court first formulated the doctrine of fundamental error. In *Haggard,* the Court focused on "the obligation of the state to see that defendant

---

1. In *State v. Smith,* 117 Idaho 225, 786 P.2d 1127 (1990), we concluded that no objection to a jury instruction is required in order to preserve an allegation of error for appeal. *Id.* at 228–29, 786 P.2d at 1130–31. However, our analysis was predicated entirely on the amendment to I.C.R. 30 removing specific language that foreclosed appellate review of any objection to an instruction not made at trial. Because no similar amendment to I.C.R. 24 has been made, and because we have not extended *Smith* in any other contexts, we decline to extend *Smith* beyond its unique facts.

receive a fair trial" and ruled that it was fundamental error for the prosecuting attorney to cross-examine the defendant regarding his failure to testify at the preliminary hearing. *Id.* at 251, 486 P.2d at 262.

In *Smith v. State,* 94 Idaho 469, 491 P.2d 733 (1971), the Court noted that "a fundamental error would be where, for example, a felony offense is tried by a court with jurisdiction to try only misdemeanors." *Id.* at 475 n. 13, 491 P.2d at 739 n. 13.

In *State v. White,* 97 Idaho 708, 551 P.2d 1344 (1976) [cert. denied, 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976)], the Court said it was fundamental error for the prosecutor to use the defendant's post-arrest and pre-trial silence to raise an inference of guilt against him and to impeach his credibility. *Id.* at 713, 714 n. 8, 551 P.2d at 1349, 1350 n. 8.

In *State v. Lankford,* 113 Idaho 688, 747 P.2d 710 (1987) [reversed on other grounds, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991)], the Court ruled that it was not fundamental error for the trial court: (1) not to question jurors regarding the adverse effect of pretrial publicity, and (2) to allow uniformed sheriff's deputies to sit in the courtroom with the defendant. *Id.* 113 Idaho at 693, 747 P.2d at 715.

In *State v. Bingham,* 116 Idaho 415, 776 P.2d 424 (1989), the Court ruled that the trial court's allowing a physician to testify concerning the medical condition of the alleged victim was not fundamental error. *Id.* at 423, 776 P.2d at 432.

In *State v. Kenner,* 121 Idaho 594, 826 P.2d 1306 (1992), the Court ruled that violation of a defendant's privilege against self-incrimination is fundamental error, but that failure of a judge to disqualify herself and inadequacies in the complaint are not. *Id.* at 596–97, 826 P.2d at 1308–09.

In *Knowlton,* the Court ruled that it is not fundamental error for a judge not to withdraw from cases which merely tangentially relate to the judge's participation in an organization or committee. 123 Idaho at 918–20, 854 P.2d at 261–63.

*State v. Sarabia,* 125 Idaho at 818, 875 P.2d at 230.

Lewis argues that the prosecutor's questions in this case constitute fundamental error because they infringed on his right to a fair trial by prejudicing the jury in favor of the prosecution. We disagree.

It is well established in Idaho that "great latitude is allowed in the examination of veniremen upon their voir dire." *State v. Bitz,* 93 Idaho 239, 243, 460 P.2d 374, 378 (1969) (quotations omitted). While it is certainly conceivable that a prosecutor could ask a question of a juror that so prejudiced the defendant's rights that it would be a fundamental error, the questions posed in the instant case do not even come close to approaching that threshold, given the broad latitude available in voir dire. To the contrary, the questions here were properly designed to obtain information to assist the prosecutor in exercising his peremptory challenges by eliciting responses about the jurors' previous exposure to child sexual abuse and the manner in which it was reported.

In sum, we hold that Lewis waived any objection to the prosecutor's questions for two reasons: failure to voice a contemporaneous objection and failure to exercise all available peremptory challenges. We further hold that neither the questions asked nor the answers given amounted to fundamental error.

## II. The District Court Did Not Abuse Its Discretion In Admitting Evidence Of The Defendant's Other Acts Of Sexual Abuse.

Lewis argues that the district court did not conduct a balancing of probative value and prejudicial effect before granting the State's motion in limine regarding other acts of lewd conduct with children. The record before the Court is not sufficient for the Court to address completely the merits of this claim.

Lewis failed to designate a transcript of the September 11, 1992, hearing on this issue in his Notice of Appeal. We have made clear that in criminal cases, as in civil cases, "[a]ppellants bear the burden of providing this Court with an adequate record which documents and supports their contentions.... In the absence thereof we will not presume error." *State v. Wallace,* 98 Idaho 318, 320,

563 P.2d 42, 44 (1977); *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979).

Nevertheless, to the extent possible, we will proceed to address the merits of the claim based on the incomplete record. *See State v. Zimmerman*, 121 Idaho 971, 978, 829 P.2d 861, 867–68 (1992) (review of record demonstrates that the trial court conducted a balancing analysis despite lack of specific finding).

The handwritten Court Minutes of the September 11, 1992, hearing, which were written by the Deputy Clerk of Court and were signed by the trial judge, read as follows:

> Judge—reads some of rule 404 aloud—1) relevancy question—if relevant—is it unfairly prejudicial to defendant not identical scheme or plan but pedophilic interest—appropriate in this instance

That language substantially parallels the language of I.R.E. 403 that Lewis contends the district court neglected to consider. On the basis of the limited record before us we conclude the district court did in fact conduct a balancing analysis as required.[2]

The court's decision to admit the testimony of the two girls from the prior trial is reviewed for abuse of discretion only. *State v. Phillips*, 123 Idaho 178, 181, 845 P.2d 1211, 1214 (1993). Based on our review of the record, we find no abuse of discretion in this case. The following facts support the trial court's determination that the probative value of the girls' testimony outweighed its prejudicial effect: when abused by Lewis, the two girls whose transcribed testimony was read were approximately the same age as the victim in this case was at the time when she was abused by Lewis; the abuse of the two girls whose testimony was read occurred within a few months of the abuse in this case; Lewis made a threat of retaliation against the two girls similar to the threat he made in this case; and the jury was given an instruc-

tion limiting their consideration of the evidence.

■ Lewis maintains that beyond the substance of the transcribed testimony, the manner in which it was introduced through the court, counsel, and a volunteer reader was unfairly prejudicial to the defendant. This objection was never voiced at trial. While counsel did renew his objection to the substance of the transcribed testimony as impermissible evidence of a propensity to commit the crime charged, he never articulated any objection based on the way the testimony was read. Rather, defense counsel willingly participated in the reading. Therefore, we review this question utilizing the fundamental error standard previously discussed.

Our review of the record confirms that the jury heard the girls testify to their actual ages in the transcript and the jury was instructed that the high school girl who read the girls' testimony had no connection whatsoever to the case. Therefore, the manner in which the transcribed testimony was read to the jury was not fundamental error.

### III. The District Court Did Not Abuse Its Discretion In Allowing Lewis' Daughter To Testify As A Rebuttal Witness.

■ Lewis maintains that the testimony of his daughter in rebuttal was also evidence of other crimes improperly admitted pursuant to I.R.E. 404(b). This argument is without merit because the district court made very clear that the defendant's daughter was being permitted to testify as a rebuttal witness and not pursuant to I.R.E. 404(b). Her testimony was a direct rebuttal of the defendant's claim that he had never digitally penetrated anyone. Decisions regarding admission of rebuttal evidence are reversed only for abuse of discretion. *State v. Smith*, 117 Idaho 225, 231–32, 786 P.2d 1127, 1133–34 (1990). Clearly, this was proper rebuttal and, accordingly, the district court did not abuse its discretion in allowing the testimony.

Nevertheless, consideration of the probative value of the evidence for purposes of the I.R.E. 403 analysis requires that there be a legitimate purpose for introduction of the evidence. We are satisfied that there was. *See State v. Moore*, 120 Idaho 743, 819 P.2d 1143 (1991).

---

**2.** Lewis did not challenge the lower court's findings under *I.R.E. 404(b) regarding the purpose* for which the evidence was admitted in his brief on appeal. Although counsel attempted to raise the issue for the first time at oral argument, the objection clearly has been waived.

## IV. There Was No Cumulative Error.

Lewis' final argument is that the cumulative effect of the errors alleged combined to deprive him of a fair trial.[3]

■ We have previously said that "[u]nder the cumulative errors doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process." *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994). However, we have never held that claims of individual alleged errors that have been waived below may be considered as part of a cumulative error analysis on appeal. Therefore, for purposes of Lewis' appeal, we consider only the two alleged errors that have been preserved for our review. Because we have analyzed those arguments and ruled there were no errors, together they cannot amount to cumulative error. *See State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983); *see also United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir.1990) (en banc) ("cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors").

## CONCLUSION

In summary, we hold as follows: Lewis waived any objection to the voir dire; the district court did not abuse its discretion in admitting the evidence of Lewis' similar conduct; the district court properly allowed the rebuttal evidence; and there was no cumulative error. Accordingly, we affirm.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.

---

**3.** In the course of making this argument Lewis vaguely alludes to two alleged deficiencies in his trial without directly assigning them as errors.

First, Lewis claims that he should have been able to call as a witness a police officer who had interviewed the victim and her brother. However, the witness had not been served a subpoena and although defense counsel initially requested a continuance to obtain the officer's testimony, the motion for a continuance was abandoned for reasons entirely unclear from the record before us. To the extent Lewis is making a claim of error, it has been waived and does not rise to the level of fundamental error.

Second, Lewis suggests that the shortcomings of his trial counsel prejudiced his right to a fair trial. However, we will not address this claim because at oral argument Lewis' counsel on appeal explicitly waived any claim of ineffective assistance of counsel.