**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34220**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **2009 Opinion No. 43** |
| Plaintiff-Respondent, ) | |
| ) | **Filed: June 2, 2009** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| CLAYTON ADAMS, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

Judgment of conviction and sentences for second degree murder and aggravated battery, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

LANSING, Chief Judge

Clayton Adams appeals from his convictions for second degree murder and aggravated battery, asserting that two fundamental errors deprived him of a fair trial. He argues that the district court erred by failing to *sua sponte* dismiss a juror for cause because she was biased and that the prosecutor committed misconduct during closing argument. He also asserts that his sentences are excessive. We affirm.

**I.**

**FACTS AND PROCEDURE**

Three friends, Tyler Gorley, Stephen Maylin and Mikeal Campbell, were leaving a Caldwell bar at closing time when they ran into Adams and his friend, Sergio Madrigal, outside the entrance. Campbell spoke to Adams, whom he knew, and the group decided to go to a private party at another location, with the intent to buy beer and drop off Maylin at his home

1

along the way. The five men got into Adams' car. According to the State's evidence at Adams' subsequent trial, the following events then unfolded. En route, Adams asked for beer and gas money from Gorley, Maylin and Campbell, and when he was told that they had no money, Adams became enraged. Adams told the men that he had a knife and a gun and that someone was going to get hurt if he was not given money. In an apparent attempt to scare the men into compliance, Adams started driving recklessly, speeding and running stop lights and stop signs. Gorley, Maylin and Campbell demanded to be let out of the car, but Adams initially refused to stop. Eventually, Adams slammed on his brakes in the middle of a rural road, and the three men got out of the car to escape from him. Campbell was successful in doing so but the other two men were not. As Maylin was exiting by the left-rear passenger door, he was met by Adams, who stabbed Maylin once in the side before Maylin got away. Adams then stabbed Gorley five times, killing him. Adams then got back in his car and drove away, with Madrigal still a passenger. The two men then bought beer, unsuccessfully looked for the party and then drove to Adams' home where he was arrested.

Adams was charged with first degree premeditated murder, or in the alternative, first degree felony murder, three counts of attempted robbery, and one count of aggravated battery. The jury acquitted on the first degree murder charges and the attempted robbery charges, but found Adams guilty of the lesser offense of second degree murder and of aggravated battery. The district court imposed a unified life sentence with twenty-five years determinate for second degree murder and a consecutive ten-year sentence with three years determinate for aggravated battery.

Adams appeals from his convictions and asserts two trial errors--that the district court should have *sua sponte* dismissed a juror for cause when Adams did not challenge the juror for cause and that the prosecutor committed misconduct during closing argument. Adams also asserts that the district court abused its discretion by imposing unreasonably severe sentences.

## II.

## ANALYSIS

### A. The Juror

During voir dire by the prosecutor, potential Juror 608 revealed that she had previously served on a jury in a criminal case. She described her experience as follows:

2

I was disappointed. At the end, the prosecutor said if you have questions, you know, stay in the room and we'll come in and answer. And I didn't like that, as jurors, we weren't given what I thought was all of the information, you know, that the courts are very selective about what jurors can hear. It's like we want you to sit up there, we want you to rule or do whatever it is you do, but we're only going to give you this little piece, and then you have to make your decision with that. I wanted - the things that he told us afterwards about the case that he could not present, I didn't understand the reasons why they couldn't, so I didn't care for that.

. . . .

I didn't like having to - it was like every three minutes a word would be mentioned, and it's, oh, juror, leave, come back in five minutes, three minutes. Later a word is mentioned. Oh, jury's got to leave. It was like, you know, either stop saying the word or tell us what you're not telling us.

On later voir dire by defense counsel, the following exchange occurred:

DEFENSE COUNSEL: You know, there might be an occasion, an instance or an occasion where we might have to take up some legal issues, and we might have to do that in the absence of the jury.
JUROR NO. 608: Yes
DEFENSE COUNSEL: That we might have to excuse the jury. Will you promise me that you will not hold that against either myself or the State if that happens in this case?
JUROR NO. 608: Do I promise? No.
DEFENSE COUNSEL: You cannot promise that?
JUROR NO. 608: (Shakes head.)
DEFENSE COUNSEL: Okay. At least will you be willing to promise me that you will not be willing to hold that against Mr. Adams, the individual I'm trying to help over here?
THE COURT: Counsel, with all due respect, I'm not going to allow you to require her to promise.
DEFENSE COUNSEL: Okay. Will you be willing to do your best to make sure if that happens in this case, you do not hold that against Mr. Adams, the individual I'm trying to help in this case?
JUROR NO. 608: Yes, I will do my best.
DEFENSE COUNSEL: You will do your best. That's all we can ask for.

Defense counsel did not move to exclude the juror for cause or use a peremptory challenge to remove her from the panel, and she ultimately served as a juror in the trial. Adams now contends that the district court should have *sua sponte* removed the juror for cause because she exhibited bias and that the court's failure to do so amounts to fundamental error.

Our appellate courts normally require that an issue be raised in the trial court before it may be asserted as error on appeal. *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). Therefore, the failure to "exhaust the means available to exclude unacceptable jurors"

3

ordinarily precludes consideration on appeal of a subsequent claim of error in seating the juror. *State v. Johnson*, 145 Idaho 970, 979, 188 P.3d 912, 921 (2008). An exception to that rule arises in criminal cases when a fundamental error is shown. *Id.* Our Supreme Court has defined fundamental error as follows:

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*Id.* (quoting *State v. Lewis*, 126 Idaho 77, 80, 878 P.2d 776, 779 (1994)). Fundamental error has also been described as "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process.'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991)).

Appellate review of a claimed error to which no objection was made in the trial court on the basis that it constituted fundamental error is the exception, not the rule, and the fundamental error doctrine is not a mechanism for criminal defendants to obtain judicial review of every plausible claim of trial error. The contemporaneous objection requirement exists for a number of reasons. Among these, it gives the trial court the opportunity to consider and resolve disputes at the time when the error can be prevented or cured, or any prejudice attendant to an error can be lessened. It also prevents a defendant from "sandbagging" by remaining silent about a recognized error and belatedly raising the error only if the case does not conclude in his favor. *See Puckett v. United States*, ___ U.S. ___, ___, 129 S.Ct. 1423, 1428-29 (2009) (discussing the scope of the federal "plain-error" rule, Federal Rule of Criminal Procedure 52(b)).

Appellate courts should be particularly careful in applying the fundamental error doctrine to what may be a matter of legitimate strategic or tactical choices by defense counsel, which generally cannot be discerned from the record on appeal. *See Mintun v. State*, 144 Idaho 656, 662, 168 P.3d 40, 46 (Ct. App. 2007). Decisions whether to challenge a potential juror for cause fall within that category. In assessing whether to challenge a particular juror, attorneys must not only weigh the perceived negative features against the favorable features of that particular juror, they must also consider whether eliminating the juror could result in an even less acceptable individual moving into that position on the jury panel. Here, the absence of a challenge to Juror 608 may have been a tactical decision by defense counsel, because although Juror 608 gave

4

some problematical answers in voir dire, other factors may have led defense counsel to believe that she was, on balance, a person that he wanted on the jury or that she was more acceptable than another who might be substituted for her. After his conviction, and in hindsight, Adams now contends that the trial court should have intervened *sua sponte* to exclude the juror for cause. We are of the view that trial courts should not be required or encouraged, in any but the most extreme circumstances, to interfere with legitimate tactics of counsel by excusing for cause a juror who has not been challenged by either party. Therefore, we will not find fundamental error in such trial court inaction in the absence of a clear record that a potential juror would be so biased against a criminal defendant, or otherwise excludable for cause, that neither the trial court nor defense counsel could have reasonably allowed the juror to serve.

Such a record does not exist here. At no time did the juror indicate that she was biased against criminal defendants or in favor of the State. Instead, the juror disclosed that she resented the removal of the jurors from the courtroom when attorneys' objections required discussion in the jury's absence, and that if this occurred at Adams' trial she would not promise not to hold it against the defense attorney or the prosecutor. She expressed resentment toward a part of the trial process, not toward either party. This is not a clear "bias" against the defense.

Adams maintains that the decision in *State v. Hauser*, 143 Idaho 603, 608-11, 150 P.3d 296, 301-04 (Ct. App. 2006), demonstrates that he is entitled to appellate relief on this issue. In *Hauser*, we reversed a conviction and remanded for a new trial because the district court had incorrectly denied a defendant's motion to exclude a juror for cause on the ground of bias. That decision offers no support for Adams' present claim, however, because in *Hauser*, defense counsel moved to excuse the juror for cause, thereby preserving the issue for appeal and eliminating any possibility that retention of the juror was a tactical choice of the defense.

Adams has not shown fundamental error in the district court's failure to excuse Juror 608 *sua sponte*.

To the extent that Adams is arguing that the district court erred by disallowing his effort to elicit a "promise" from the juror that she would not hold it against Adams if the jurors were sometimes removed from the courtroom during the trial, we agree that this was error. Decisions of our Supreme Court indicate that it is appropriate to obtain "assurances" from venire persons concerning their ability to set aside any bias, to follow the trial court's instructions, and to decide the case solely on the facts presented at trial. *Johnson*, 145 Idaho at 979, 188 P.3d at 921; *State*

5

*v. Hairston*, 133 Idaho 496, 506, 988 P.2d 1170, 1180 (1999); *State v. Jones*, 125 Idaho 477, 484, 873 P.2d 122, 129 (1994). In *Hauser*, we used the terms "assurance" and "promise" interchangeably. *Hauser*, 143 Idaho at 609-11, 150 P.3d at 302-04. We see nothing impermissible in defense counsel's request here for a promise from Juror 608 that she would not become biased against him as a result of periodic removal of the jury from the courtroom.

This error by the district court affords Adams no relief, however, because, as explained above, this record does not show that the juror would become biased against Adams or would assume that evidence detrimental to Adams was being withheld from the jury. The district court's intervention did not preclude defense counsel from conducting further inquiries about Juror 608's attitude. For example, defense counsel could have asked Juror 608 whether she would make an assumption that evidence detrimental to Adams was being kept from the jury if they were removed from the courtroom, whether she would be able to follow the typical court instruction that jurors should not make any assumptions about the content of evidence that was excluded by the court, and whether removal of the jurors from the courtroom upon evidentiary objections from counsel would affect her decision making. Adams' counsel did not pursue any such inquiries, and therefore the record reveals no answers to such questions. Trial errors that do not affect substantial rights of the parties will not be deemed grounds for reversal on appeal. Idaho Criminal Rule 52; *State v. Severance*, 132 Idaho 637, 639, 977 P.2d 899, 901 (Ct. App. 1999). Because the record here does not demonstrate that a biased juror was seated as a result of the trial court's disallowance of Adams' request for a promise from Juror 608, he has shown no right to relief on appeal.

### B. Prosecutorial Misconduct During Closing Argument

Adams next contends that the prosecutor committed misconduct during his rebuttal closing argument when, after reviewing the trial evidence, the prosecutor said:

> [W]e ask one thing, that you take us home, home to justice, justice for Mike Campbell who watched his friend die, justice for Stephen Maylin who got stabbed trying to run away from someone he didn't even know, justice for Tyler Gorley whose death is the reason we are here and whose life is insulted by the story that (Adams) wants you to believe, and justice for Clayton Adams who did these things, who you know committed these crimes, and who thought so little of it, that he went and bought beer. We ask for justice. Thank you.

Adams made no objection to this argument but now contends that the statement was outside the bounds of proper closing argument and was designed to inflame the passions and prejudices of

6

the jury. Because Adams did not object to the prosecutor's argument at trial, he again contends that the issue now raised on appeal is a matter of fundamental error.

Closing argument serves to sharpen and clarify the issues for the jurors and to help them remember and interpret the evidence. It gives each party an opportunity to present its view of what the evidence proves or fails to prove. *Herring v. New York*, 422 U.S. 853, 862 (1975); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007); *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Counsel are traditionally afforded considerable latitude to discuss fully, from their respective standpoints, the evidence, inferences and deductions arising from the evidence. *State v. Payne*, 146 Idaho 548, 566, 199 P.3d 123, 141 (2008); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. It is well established, however, that it is not a proper use of closing argument for an attorney to appeal to emotion, passion or prejudice of the jury through use of inflammatory tactics. *Id.* at 86-87, 156 P.3d at 587-88.

Prosecutorial misconduct in closing argument rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003); *State v. Lovelass*, 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct. App. 1999). This Court has reversed convictions for prosecutorial misconduct during closing argument where timely objections to the argument were made and overruled and the misconduct was patent, repeated and egregious. For example, in *Phillips*, 144 Idaho at 87-88, 156 P.3d at 588-89, we reversed a conviction where the prosecutor repeatedly and improperly appealed to the emotions of the jury by arguing that the jury should be upset and irritated by trial evidence that he attributed to the defense, but that was actually elicited by the prosecution. Similarly, in *State v. Beebe*, 145 Idaho 570, 574-76, 181 P.3d 496, 500-02 (Ct. App. 2007), we reversed a conviction when the prosecutor misstated the evidence, misstated the law by grotesquely mischaracterizing the defendant's defense, and repeatedly appealed to the jury to decide the case on factors other than evidence of guilt. We have also held that the prosecutorial misconduct to which no objection was made at trial rose to the level of fundamental error where the prosecutor repeatedly disparaged defense counsel by implying that the defense attorney participated in or facilitated the defendant's "lies," asked the jury to rely on the prosecutor's self-proclaimed trustworthiness and integrity and that of the arresting officer, and appealed to the emotion and passion of the jury by

asking its members to step into the shoes of a hypothetical victim of the defendant's alleged drunk driving. *State v. Gross*, 146 Idaho 15, 19-21, 189 P.3d 477, 481-83 (Ct. App. 2008). We held that all of these improper arguments sought a finding of guilt based on factors outside the evidence and that, in light of the evidence adduced at trial, the misconduct was not harmless.

Adams argues that the prosecutor here, by asking the jury to "take us home, home to justice" for the victims, appealed to the passions and prejudices of the jury like the prosecutors in *Phillips*, *Beebe* and *Gross*. He contends that the request for justice was improper because the prosecutor was urging the jury to provide comfort or satisfaction or "justice" to the victims or to punish Adams for his indifference to the harm he had done.

We are not persuaded that Adams has shown fundamental error in the prosecutor's arguments. First, it is permissible for a prosecutor to ask the jury to do justice if that request is in the context of argument addressing how trial evidence demonstrates the defendant's guilt. Justice is, after all, the goal of any criminal trial. If the prosecutor's requests here for justice for the victims, or his reference to the evidence of Adams' indifference to his stabbing victims, can be viewed as straying into the realm of emotion, it does not approach the level of egregiousness necessary to constitute fundamental error. These concluding remarks in the prosecutor's rebuttal argument came immediately after his description of how the trial evidence proved Adams' guilt, and it does not amount to an inflammatory appeal for the jury to render its decision on anything other than the evidence adduced at trial. Fundamental error is not shown.

## C.     Sentence Review

Adams next contends that his sentences--a unified life sentence with twenty-five years determinate for second degree murder and a consecutive ten-year sentence with three years determinate for aggravated battery--are excessive.

We will not conclude on review that a trial court abused its sentencing discretion unless the sentence is unreasonable under the facts of the case. *See State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Bowcut*, 140 Idaho 620, 621, 97 P.3d 487, 488 (Ct. App. 2004); *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App. 1989); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). The objectives of sentencing, against which the reasonableness of a sentence is to be measured, are the protection of society, the deterrence of crime, the rehabilitation of the offender and punishment or retribution. *Id.* In examining the reasonableness of a sentence, we conduct an independent review of the record, focusing on the

nature of the offense and the character of the offender. *State v. Young*, 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct. App. 1991).

The crimes involved here are especially heinous--Adams killed one man and stabbed another in a petty dispute over his demands for beer and gas money. His record prior to these crimes also evidences a lack of regard for the law or for the rights of other people. From 2001 to these offenses in 2006, there had not been a year in which Adams was not charged with or convicted of a crime. Among other offenses, Adams had previously been convicted of battery, resisting an officer, and driving under the influence (twice), and had been charged with aggravated assault. He had previously been incarcerated in the retained jurisdiction program and was on probation at the time of the present offenses. Both Adams' consumption of alcohol and his possession of a weapon at the time of the present offenses violated terms of that probation. The current crimes, together with Adams' past conduct, abundantly show that he is a danger to society. In light of all of the goals of sentencing, the nature of these offenses and Adams' character as revealed by his criminal history, we cannot say that the sentences imposed here are excessive.

### III.

### CONCLUSION

Adams has not shown fundamental error in jury selection or in the prosecutor's closing argument, and his sentences are not excessive. Accordingly, the judgment of conviction and sentences are affirmed.

Judge PERRY **CONCURS.**

Judge GRATTON, **SPECIALLY CONCURRING**.

I write separately to express my belief that a "promise" and an "assurance" are not synonymous or interchangeable. Our Supreme Court decisions use the term "assurance," in regard to voir dire. *State v. Johnson*, 145 Idaho, 970, 979, 188 P.3d 912, 921 (2008); *State v. Hairston*, 133 Idaho, 496, 506, 988 P.2d 1170, 1180 (1999); *State v. Jones*, 125 Idaho 477, 484, 873 P.2d 122, 129 (1994). Indeed, this Court, in *State v. Hauser*, 143 Idaho 603, 609-611, 150 P.3d 296, 302-304 (Ct. App. 2006) generally used the term "assurance," and cited to several cases similarly using that term. Unfortunately, in *Hauser*, we suggested that perhaps "the trial court" (not counsel) could have participated by "directly asking the juror whether he would promise or commit." *Id.* at 611, 150 P.3d at 304. The sample questions proposed by the

9

majority demonstrate that assurances can be obtained without asking a potential juror to make a promise. The sample question proposed in *Hauser*, using the term "promise" should be disavowed. I do not believe that attorneys should be extracting promises from potential jurors. I can only imagine where such a practice may lead.