867 P.2d 234

STATE of Idaho, Plaintiff–Respondent,

v.

Terry Wayne TRAVIS, Defendant–Appellant.

Nos. 19821 and 20093.

Supreme Court of Idaho,
Boise, December 1993 Term.

Jan. 18, 1994.

Alan E. Trimming, Ada County Public Defender, Deborah A. Whipple, Deputy Public Defender, Boise, for appellant. Deborah A. Whipple argued.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Myrna A.I. Stahman argued.

JOHNSON, Justice.

This is a probation revocation case. We conclude that the trial court did not abuse its discretion: (1) by considering the results of a polygraph examination in revoking probation, nor (2) by revoking probation. We also conclude that pursuant to I.C. § 19–2601(4), the trial court did not have authority to retain jurisdiction in connection with the revocation of probation, when the attempt to retain jurisdiction came more than five years after the original sentence.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Terry Wayne Travis (Travis) pled guilty to lewd conduct with his eight-year-old stepdaughter. The trial court sentenced Travis to an indeterminate term of ten years, but retained jurisdiction for 180 days to allow for evaluation of Travis at the North Idaho Correctional Institution (N.I.C.I.) at Cottonwood, Idaho.

At the conclusion of the period of retained jurisdiction, the trial court suspended the balance of Travis's sentence and placed Travis on probation. One of the special conditions of the probation was that Travis submit to a polygraph examination, if requested by his probation officer.

After Travis had completed five years of his probation, Travis's probation officer reported that Travis had violated his probation by:

(1) failing to submit to a polygraph examination requested by his probation officer,

(2) changing residences without obtaining written permission from his probation officer, and

(3) failing to report to his probation officer on dates and at times specified.

Following a probation violation hearing, the trial court determined that Travis had violated his probation by changing residences and by failing to report. Although Travis had not submitted to a polygraph examination as required by the terms of his probation, the trial court determined this did not violate the probation, because it was unreasonable for Travis's probation officer to require Travis to set up and pay for the examination himself.

The trial court set a future date for disposition of the violation. Before the disposition hearing, Travis submitted to a polygraph examination. The polygraph examiner concluded that Travis was attempting deception when he said that during his probation he had not: (1) been involved in any sexual activity with any minor child, or (2) sexually touched any minor child.

At the beginning of the probation disposition hearing, Travis moved that the trial court not consider the results of the polygraph examination. The trial court denied the motion and stated that it gave the polygraph examination results some weight in determining the disposition.

The trial court revoked Travis's probation and reduced Travis's sentence to an indeterminate term of five years. The trial court said it retained jurisdiction for 120 days and recommended that Travis receive another full sexual abuse evaluation at N.I.C.I.

When Travis had completed this second period of retained jurisdiction, the trial court entered an order relinquishing jurisdiction, leaving Travis to serve the balance of the five-year, indeterminate term.

Travis appealed.

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY CONSIDERING THE RESULTS OF TRAVIS'S POLYGRAPH EXAMINATION IN REVOKING PROBATION.

Travis asserts that the trial court abused its discretion by considering the results of the polygraph examination in revoking Travis's probation without making a finding that the results were reliable. We disagree.

■ Except where there is fundamental error in a criminal case, the Court will not consider an issue that is presented for the first time on appeal. *State v. Knowlton*, 123 Idaho 916, 918, 854 P.2d 259, 261 (1993).

At the disposition hearing, Travis moved: to strike the polygraph examination that has been submitted and ask that the Court not consider that polygraph in disposition of this matter based upon the reason that polygraph examinations have not been found sufficiently valid and reliable for use in Court hearings in this state.

The trial court denied this motion.

■ On appeal, Travis argues that before considering the results of the polygraph examination, the trial court should: (1) have made a factual finding that the examination was conducted using scientifically accepted methods; and (2) have made a finding that the examiner was experienced and competent to conduct the examination. We conclude that the motion at the disposition hearing sufficiently preserved only the issue of the reliability of polygraph examination results in general, not the lack of reliability of this particular examination. Therefore, we do not address the significance, if any, of the trial court's failure to make findings concerning the lack of reliability of this particular polygraph examination.

We note that I.C.R. 32(e)(1) provides:

The presentence report may include information of a hearsay nature where the presentence investigator believes that the information is reliable, and the court may consider such information. In the trial judge's discretion, the judge may consider material contained in the presentence report which would have been inadmissible under the rules of evidence applicable at a trial.

■ Travis did not invoke this rule to challenge the trial court's consideration of the polygraph examination results, which were an addendum to the supplemental presentence report. Therefore, we will not address the applicability of this rule to the trial court's consideration of the results of the polygraph examination.

In *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), *cert. denied, Idaho v. Fain*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989), the Court determined that the results of a polygraph examination are generally not admissible at trial: "As a general rule, results of polygraph examinations are inadmissible absent a stipulation by both parties." *Id.* at 86, 774 P.2d at 256. The rationale given by the Court was that "the physiological and psychological bases for the polygraph examination have not been sufficiently established to assure the validity or reliability of test results." *Id.* at 87, 774 P.2d at 257. *Cf. State v. Fodge*, 121 Idaho 192, 824 P.2d 123 (1992) (testimony concerning physiological responses observed during a polygraph examination not admissible at trial).

In *Matter of X,* 110 Idaho 44, 714 P.2d 13 (1986), a Child Protective Act case, the Court considered the admission of testimony of a polygraph examiner. The examiner was permitted to testify that the examination indicated that a father's denial of involvement in sexual activity with the child was truthful. The case against the father consisted

almost entirely of "evidence" received second hand from counselors and psychologists who have interviewed the alleged victim and who have then formed conclusions of sexual abuse based on actions or mental attitudes of the alleged victim.

*Id.* at 49, 714 P.2d at 18.

In *Matter of X,* the Court distinguished the use of polygraph evidence in jury trials from its use in hearings under the Child Protective Act:

We note further that hearings under the Child Protective Act are conducted by the court without a jury, and thus avoided is the common problem of an exaggerated popular opinion of the accuracy of such a technique with the potential to mislead a jury.

*Id.*

The Court carefully crafted the ruling allowing the admission of the polygraph evidence under the circumstances in *Matter of X:*

Because of the nature of the other type of evidence admitted into such proceedings, and the extreme difficulty as noted herein, of the proof, we hold that polygraph evidence will be admissible in Child Protective Act proceedings where sexual abuse is alleged and the majority, if not sole, evidence offered to prove the sexual abuse is of the type in the case at bar. Such polygraph evidence will be admissible whether offered by or on behalf of the accused or the victim. The weight to be given polygraph examination testimony is in the discretion of the trial court in view of the qualifications and experience of the examiner and the particular questions asked of the subject.

*Id.* at 50, 714 P.2d at 19.

In *State v. Edelblute,* 91 Idaho 469, 424 P.2d 739 (1967), the Court restricted, to some

degree, the evidence admissible in probation revocation proceedings by requiring "that all evidence be related to the subject of the inquiry, i.e., has [the probationer] in fact violated [the] probation agreement in a manner which demonstrates that [the probationer] no longer deserves [a] circumscribed liberty?" *Id.* at 480, 424 P.2d at 750.

■ In the case now before us, there are several factors that militate in favor of allowing the trial court discretion to consider the results of the polygraph examination in determining the disposition in the probation revocation proceeding.

First, as in *Matter of X,* this was a proceeding without a jury, thus avoiding the common problem of an exaggerated popular opinion of the accuracy of a polygraph examination. The trial court carefully limited its consideration of the polygraph examination results:

[T]his Court does give some weight in terms of the ultimate disposition I am making to the result of the polygraph, not only as a therapeutic tool but also as a consideration of, if not possible reoffense. Certainly some indication that things may not seem as they are. That there may be questions and problems surfacing or arising, fully knowing—and I am fully cognizant of the fact that there is no way the State could prove that the defendant has reoffended on the basis of a polygraph test that shows deception. It is an indication that something may well be wrong. I understand the polygraph tests are certainly not foolproof, they are certainly not acceptable in Court as a diagnostic tool as to who is telling the truth and who isn't in a substantive case but it does have a place. It does carry some weight with the Court. But it has to be tempered with the fact that a) it is not a foolproof device and b) I know full well the State could not mount a case simply on a polygraph being flunked or showing deception on critical questions. But it is an indication and it does carry some weight with the Court in terms of what disposition I am going to impose.

Second, the trial court did not rely exclusively on the polygraph results in revoking

probation and requiring Travis to serve the balance of his sentence. The examination results were merely one factor the trial court used in reaching its decision. The trial court focused on Travis's resistance to supervision and uncooperativeness, in addition to "some concerns of the Court of possible reoffense based upon the polygraph."

■ Third, at the time the trial court granted probation, Travis agreed to submit to a polygraph examination, if requested by his probation officer. While Travis's agreement to this condition of his probation might not be sufficient to establish admissibility of the examination results in all circumstances, in the context of a probation revocation proceeding, Travis's agreement is another factor militating in favor of allowing the trial court to exercise its discretion in considering the results of the examination.

Employing the three-step inquiry adopted in *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989), we conclude that the trial court did not abuse its discretion in considering the polygraph examination results in this case.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REVOKING TRAVIS'S PROBATION.

Travis asserts the trial court abused its discretion in revoking Travis's probation. We disagree.

Travis argues that the trial court should not have revoked his probation because: (1) he had served five years of successful probation; (2) there was no evidence that he had reoffended; and (3) the probation violations were technical and not "substantive." Travis contends that the trial court "overreacted."

■ We review a trial court's decision to revoke probation under an abuse of discretion standard. *State v. Knowlton*, 123 Idaho 916, 920–21, 854 P.2d 259, 263–64 (1993).

■ At the hearing where the trial court determined that Travis had violated his probation, the trial court stated:

[A]s to changing residences without obtaining permission and failing to report to his probation officer; while these are more or less technical violations and while the officer through various sources could eventually track down the defendant, he has certainly violated the letter and spirit of those conditions. Everything [Travis's probation officer] gets is secondhand through intermediaries. The obligation is on Mr. Travis to directly report and to obtain permission. He has not done so. He tends to lay low, especially when he knows his PO is looking for him and he sends in secondary reports through his ex-wife and his employer as to where he might be found if all conditions are correct and Mr. Travis is of a mind to surface. While he is not absconding, while he is not necessarily hiding, he has certainly made it very difficult for the probation officer to track him down. He has had no direct contact with his probation officer, and I find that these both constitute technical violations of changing residences without written permission and failing to report to his probation officer on dates and times specified, so I am going to find that those two conditions of his probation have been violated.

The trial court then continued the matter for disposition. Between the time of the probation violation hearing and the probation disposition hearing, the trial court received a supplemental presentence report and an addendum to the supplemental report containing the results of the polygraph examination to which Travis submitted.

The supplemental presentence report concluded that Travis was not "willing to comply with the terms of his probation." It cited Travis's continued refusal to undergo a polygraph examination, since Travis had not submitted to the examination at the time the investigator submitted the supplemental presentence report. The supplemental report also referred to Travis's failure to maintain contact with his probation officer while awaiting the disposition hearing and concluded: "This investigator feels, because of the defendant's uncooperative behavior, that incarceration is warranted."

At the disposition hearing, the trial court noted:

There is also the forgotten person, ..., the victim, who suffered undue abuse and humiliation between the ages of six and eight....

But, again, in reviewing all these presentence investigations as they've come through, the forgotten victim in this case is the one who has suffered over the last five or six years as well.

....

Since Mr. Travis has returned to Idaho there's certainly been resistance to supervision, uncooperativeness, financial pressures on Mr. Travis are extreme, they are unresolvable. There are some concerns of the Court of possible reoffense based upon the polygraph. But, again, there's no way that that could be proven in a Court of law that there is a specific victim that one could point to. .... In another sense—and perhaps changing gears for a minute, given the extent and the seriousness of the sexual abuse back in 1986, Mr. Travis has—in my opinion, there is no way that he can make restitution to that victim financially. Nor, in my opinion, has he made restitution to the victim in the sense of punishment. What this all boils down to and factors is this: In trying to temper and balance all these considerations that I have gone through ..., I am going to take what I feel is perhaps an intermediate view, coupled with my concern based upon the results of the polygraph.

Employing the three-step inquiry the Court adopted in *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989), we conclude that the trial court did not abuse its discretion in revoking Travis's probation.

## IV.

### THE TRIAL COURT DID NOT HAVE AUTHORITY TO RETAIN JURISDICTION A SECOND TIME MORE THAN 120 DAYS AFTER A SENTENCE TO THE CUSTODY OF THE BOARD OF CORRECTION.

█ Travis asserts that the trial court abused its discretion by not exercising its retained jurisdiction to place Travis· on probation again at the conclusion of the period of retained jurisdiction following the revocation of probation. In response, the state asserts that the trial court did not have authority to retain jurisdiction following the revocation of Travis's probation. We agree with the state.

Following the probation revocation disposition hearing, the trial court ordered Travis to serve the balance of his sentence, but said it retained jurisdiction for 120 days pursuant to I.C. § 19–2601(4). The trial court stated that the purpose of this procedure was so that Travis could receive another sexual abuse evaluation. At the conclusion of Travis's second period of retained jurisdiction, the trial court entered an order relinquishing retained jurisdiction, causing Travis to serve the balance of his sentence.

I.C. § 19–2601(4) provides:

Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:

....

4. Suspend the execution of the judgment at any time *during the first one hundred and twenty (120) days of a sentence* to the custody of the state board of correction, during which time the court shall retain jurisdiction over the defendant which jurisdiction shall be entered on the order of commitment, and place the defendant on probation under such terms and conditions as it deems necessary and expedient, notwithstanding that the term of the court during which such defendant was convicted or sentenced may have expired; upon application of the state board of correction and for good cause shown, the court may extend the period under which it retains jurisdiction of the defendant an additional sixty (60) days.

(Emphasis added.)

█ This statute extends the jurisdiction of the trial court beyond the usual expiration of jurisdiction when the defendant has been placed in the custody of the board of correc-

tion. *See State v. McGonigal*, 122 Idaho 939, 940, 842 P.2d 275, 276 (1992). Pursuant to I.C. § 19–2601(4), in sentencing a defendant to the custody of the board of correction, a trial court may retain jurisdiction. During the period of retained jurisdiction, the trial court may exercise the retained jurisdiction to suspend the execution of judgment and place the defendant on probation. This procedure may be used, however, only during the first 120 or 180 days of a sentence.

In this case, the trial court had sentenced Travis to the custody of the board of correction and retained jurisdiction the first time more than five years before the trial court revoked the probation and attempted to retain jurisdiction again. The trial court did not impose a new sentence on Travis at the time of the probation revocation, but merely required Travis to serve the balance of the original sentence, as reduced by the trial court.

Travis contends that I.C. § 20–222 authorized the trial court to retain jurisdiction a second time. I.C. § 20–222 states:

The period of probation or suspension of sentence may be indeterminate or may be fixed by the court, and may at any time be extended or terminated by the court. Such period with any extension thereof shall not exceed the maximum period for which the defendant might have been imprisoned.

At any time during probation or suspension of sentence, the court may issue a warrant for violating any of the conditions of probation or suspension of sentence and cause the defendant to be arrested. Thereupon the court, after summary hearing may revoke the probation and suspension of sentence and cause the sentence imposed to be executed, or may cause the defendant to be brought before it and may continue or revoke the probation, *or may impose any sentence which originally might have been imposed at the time of conviction.*

(Emphasis added.)

Travis argues that the portion of I.C. § 20–222 emphasized above allows the trial court, upon revocation of probation, to impose any sentence which originally might have been imposed at the original time of sentencing, including retaining jurisdiction.

The Court has already resolved the correct interpretation of this portion of I.C. § 20–222 contrary to Travis's position. In *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980 (1980), the trial court sentenced the defendant to an indeterminate term of two years, but then suspended the sentence and placed the defendant on probation. The defendant violated the terms of probation, and the trial court revoked the defendant's probation and increased the sentence to an indeterminate term of four years.

In *Pedraza*, the Court said:

We are convinced that the portion of the statute which permits a court to "impose any sentence which originally might have been imposed at the time of conviction" refers only to a revocation of probation following a withheld judgment, while the portion which permits the original "sentence imposed to be executed" refers to a revocation of probation following a suspension of the execution of judgment and sentence.

*Id.* at 442, 614 P.2d at 982.

When the trial court revoked Travis's probation, it did not have jurisdiction to impose any sentence which it originally might have imposed. In retaining jurisdiction a second time, the trial court exceeded its authority under I.C. § 19–2601(4).

## V.

## CONCLUSION.

We affirm the trial court's revocation of Travis's probation and reject Travis's challenge to the trial court's failure to again place him on probation after the trial court attempted to retain jurisdiction a second time.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.