No. 78,447

STATE OF KANSAS, *Appellee,* v. ROY A. LUMLEY, *Appellant.*

(977 P.2d 914)

Opinion filed April 16, 1999.

*Craig Durham*, assistant appellate defender, argued the cause, and *Randall L. Hodgkinson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellant.

*Michelle M. Sehee*, assistant district attorney, argued the cause, and *Debra S. Peterson*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals the district court's "resentencing" him to imprisonment for failing to pass a polygraph test. Defendant argues that although the district court has jurisdiction to order polygraph testing as a condition of probation, the court could not use the results of the polygraph test to revoke defendant's probation.

On April 4, 1996, Roy A. Lumley pled guilty to three counts of aggravated indecent liberties and one count of criminal sodomy of his minor daughters. At the June 11, 1996, sentencing, Lumley requested a dispositional departure of probation. To support his request for a departure, Lumley's attorney submitted the report of Comprehensive Community Care of Sedgwick County, which recommended that Lumley continue in a community-based sexual offender treatment program under close supervision of community corrections. Lumley's supervision during the treatment program included a requirement that he submit to polygraph examinations. The State did not oppose Lumley's requested departure.

The district judge imposed a sentence of 102 months' imprisonment, then concluded that the reports and evaluations submitted provided substantial and compelling reasons for granting the departure requested by Lumley. The judge placed Lumley on 60 months' probation. The district judge stated as a condition of probation:

"Mr. Lumley will submit to a polygraph examination not less ofter than every six months at his expense. He'll not have any contact with any child less than 16

years of age, period. He'll not have contact with his daughters until arrangements are made between his counselor and their counselor . . . .

. . . .
"Mr. Lumley will provide releases for any and all treatment he is receiving or has received in the past, any and all medical treatment that he has received in the past and will receive in the future."

On December 23, 1996, a warrant was issued for Lumley's arrest. The warrant was based on a sworn allegation that Lumley's answer to a polygraph examiner's question was untruthful regarding contact with a child less than 16 years of age.

At the January 28, 1997, hearing on the probation violation, Lumley's attorney moved to quash the arrest warrant as facially invalid and violative of Lumley's due process rights. Lumley's attorney asserted that the polygraph results were not admissible into evidence without a prior stipulation to admissibility, and that Lumley had not stipulated to the introduction of the polygraph examination results.

The judge responded:

"THE COURT: So if you're telling me he's not willing to have a polygraph [examination] be part of his probation—which is what I'm hearing you say—I'll say fine and there won't be any probation and we'll give him credit for time served and I'll send him to the Secretary [of Corrections].

"MR. LEHR: Umm, your Honor, I'm not saying that this court does not have the power to enter as a condition of probation a requirement that Mr. Lumley undergo a polygraph test to insure his compliance with the conditions of probation. However, I have been unable to find any case in the United States that allows for the introduction of that test at a probation violation hearing.

"THE COURT: Where it was a condition of probation?

"MR. LEHR: As a condition to be used as part of his therapy, not as a basis for addition evidence against him to be introduced to send him back to prision.

"THE COURT: Oh, I'll overrule that objection.

"MR. LEHR: That's where my objection comes in.

"THE COURT: Okay, I'll find that Mr. Lumley is not willing, was not willing to have a polygraph [examination] be part of his conditions of probation. The court was not made aware of that. That's a fraud on the court. Therefore, we'll go back to ground zero and we'll start over with sentencing again."

The judge then indicated that without the polygraph examinations and the admission of the results of the examination as a condition of probation, the probation program recommended by com-

munity corrections could not be maintained. The judge found that Lumley, by claiming he had not stipulated to the admission of the results of the polygraph examination, had perpetrated a fraud on the court. Based on the fraud, the judge "resentenced" Lumley to the prison term originally imposed and committed Lumley to the Secretary of Corrections.

Lumley filed a notice of appeal claiming that the district court lacked jurisdiction to resentence him. The Court of Appeals affirmed Lumley's sentencing in *State v. Lumley*, 25 Kan. App. 2d 366, 963 P.2d 1238 (1998).

The Court of Appeals found that the district court's statement that it would "start over with sentencing again" if Lumley did not stipulate to the admission of the polygraph results was not controlling. It noted that "[t]he substance of the [judge's] action, rather than the label, controls our review." 25 Kan. App. 2d at 369. The Court of Appeals found that the judge's "resentencing" of Lumley was actually a revocation of his probation.

In reaching this determination, the Court of Appeals relied on *Andrews v. State*, 11 Kan. App. 2d 322, 720 P.2d 227 (1986). In *Andrews*, the district court revoked the defendant's probation, set aside the defendant's original sentence, and then imposed a higher sentence based on the fact that probation had been granted based upon Andrews' misrepresentations of his criminal history to the court. The Court of Appeals held that the district court had no authority to set aside Andrews' original sentence and impose a new increased sentence. The *Andrews* court construed the district court's setting aside Andrews' sentence as a probation revocation. It observed that based upon fraudulent concealment of facts and circumstances existing at the time probation was granted, the defendant's probation could be summarily revoked. 11 Kan. App. 2d at 323 (quoting *Swope v. Musser*, 223 Kan. 133, 573 P.2d 587 [1977]).

The Court of Appeals noted that Lumley's case is factually similar to the *Andrews* case. The Court of Appeals asserted that the district court merely mischaracterized its action as a "resentencing," and the substance of the district court's action was actually a revocation of Lumley's probation. The Court of Appeals observed:

" '[W]hen a defendant is granted probation in reliance upon misrepresentations made to the court by or on behalf of the defendant, the probation may be summarily revoked without evidence that the terms or conditions of probation have been violated.' " *Lumley*, 25 Kan. App. 2d at 369 (quoting *Andrews*, 11 Kan. App. 2d at 323). It found that Lumley had misrepresented his intentions when he accepted the district court's grant of probation; therefore, his probation could be summarily revoked without further evidence of a violation.

The Court of Appeals focused upon Lumley's misrepresentation to the district judge and did not determine whether a probationer's failure of the polygraph test was sufficient for revoking his or her probation. This court granted Lumley's petition for review.

## PROBATION

Probation from serving a sentence is an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right. *State v. Yura*, 250 Kan. 198, Syl. ¶ 2, 825 P.2d 523 (1992). The procedure to be followed when a judge acts upon a defendant's violation of a condition of probation is set out in K.S.A. 22-3716. *State v. Freeman*, 249 Kan. 768, Syl. ¶ 1, 822 P.2d 68 (1991). Implicit in our statutory provisions for probation is the understanding that unless required by law the court need not grant probation, but if it does so, the probationer is entitled to retain his or her liberty as long as he or she abides by the conditions on which probation is granted. *Musser*, 223 Kan. 133, Syl. ¶ 1. To sustain an order revoking probation on the ground that a probationer has committed a violation of the conditions of probation, it is not necessary that the commission of the violation be established by proof beyond a reasonable doubt. Rather, a preponderance of the evidence is sufficient. *State v. Rasler*, 216 Kan. 292, 294-95, 532 P.2d 1077 (1975).

A review of the record reveals that the district judge granted Lumley probation in reliance upon Lumley's representation that he would continue in the community-based sexual offender treatment program, which included submitting to polygraph testing. Implicit in Lumley's acceptance of the benefit of probation rather

than a sentence of imprisonment was the agreement that the polygraph results would be available to the judge to determine that Lumley had complied with the conditions of his probation.

## RELIABILITY

The reliability of polygraph test results is also raised by Lumley. We briefly address the reliability and then admissibility of polygraph testing results in probation revocation hearings.

The United States Supreme Court recently considered the admissibility of polygraph evidence under the *Daubert* test, the federal standard for the admissibility of scientific evidence. The Court stated: "Although the degree of reliability of polygraph evidence may depend upon a variety of identifiable factors, there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate, because certain doubts and uncertainties plague even the best polygraph exams." *United States v. Scheffer*, 523 U.S. 303, 312, 140 L. Ed. 2d 413, 421, 118 S. Ct. 1261 (1998).

The longstanding rule in Kansas is that absent a stipulation of the parties, the results of a polygraph examination are too unreliable to be admissible at trial. *State v. Ulland*, 24 Kan. App. 2d 249, 258-59, 943 P.2d 947, *rev. denied* 263 Kan. 890 (1997). The prohibition is based on the reliability of the results in accurately measuring truthfulness or deceptiveness and the unique role of the jury as truthfinders in court. See *State v. Webber*, 260 Kan. 263, 276, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090, 136 L. Ed. 2d 711 (1997). To obtain probation, Lumley agreed that the results of the polygraph examination would be used to ensure compliance with the conditions of probation. For an in depth discussion of the use of polygraph examinations in Kansas, see *State v. Wakefield*, 267 Kan. 116, 977 P.2d 941 (1999).

## ADMISSION OF POLYGRAPH RESULTS AS A CONDITION OF PROBATION

Does the use of results of a probationer's polygraph examination to monitor the probationer's conduct violate the Fifth Amendment?

In *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136, *reh. denied* 466 U.S. 945 (1984), the United States Supreme Court addressed the federal Constitution's Fifth Amendment privilege against self-incrimination in the context of a probation. In 1980, Murphy pled guilty to a sex-related charge in a Minnesota court, was given a suspended prison sentence, and was placed on probation. The terms of his probation required him to participate in a treatment program for sexual offenders, to report to his probation officer periodically, and to be truthful with the officer "in all matters." During the course of a meeting with his probation officer, who had previously received information from a treatment counselor that Murphy had admitted to a 1974 rape and murder, Murphy, upon questioning, admitted that he had committed the rape and murder. After being indicted for the murder, Murphy sought to suppress the confession made to the probation officer on the ground that it was obtained in violation of the Fifth and Fourteenth Amendments to the Constitution. The Minnesota trial court found that Murphy was not "in custody" at the time of the confession and that the confession was neither compelled nor involuntary despite the absence of *Miranda* warnings. The Minnesota Supreme Court reversed, holding that, notwithstanding the lack of custody in the usual sense, Murphy's failure to claim the Fifth Amendment privilege against self-incrimination when he was questioned was not fatal to his claim. Due to the nature of his meeting with the probation officer, Murphy was under court order to respond truthfully, and the probation officer had substantial reason to believe that respondent's answers were likely to be incriminating. The United States Supreme Court accepted certiorari.

The *Murphy* Court observed that the Fifth and Fourteenth Amendments did not prohibit the introduction into evidence of Murphy's admissions to the probation officer in probationer's subsequent murder prosecution. It pointed out that the general obligation to appear before a probation officer and answer questions truthfully did not, in itself, convert Murphy's otherwise voluntary statements into compelled ones. It noted that a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the Fifth

Amendment privilege, rather than answer, if the witness desires not to incriminate himself or herself. If the witness chooses to answer rather than to assert the privilege, his or her choice is considered to be voluntary since the witness was free to claim the privilege and would suffer no penalty as a result of his or her decision to do so.

The *Murphy* Court stated that Murphy could not claim the benefit of the "in custody" exception to the general rule that the Fifth Amendment privilege is not self-executing. 465 U.S. at 430. It was clear that Murphy was not in custody for purposes of receiving *Miranda* protection since there was no formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

The Court observed that a reasonably perceived threat of revocation of probation does not render the privilege self-executing. The legal compulsion to attend the meeting with the probation officer and to answer truthfully the questions of the officer who anticipated incriminating answers is indistinguishable from that felt by any witness who is required to appear and give testimony, and was insufficient to excuse Murphy's failure to exercise the privilege in a timely manner. The Court stated that whether a subjective or objective test was applied, there was no reasonable basis for concluding that Minnesota attempted to attach an impermissible penalty to the exercise of the privilege. The Court held, however, that a defendant who has been convicted and placed on probation does not lose the protection of the constitutional privilege against self-incrimination. For this reason, the State may not revoke, or threaten to revoke, probation for a valid invocation of the privilege. 465 U.S. at 435.

*Murphy* makes it clear that the State cannot make waiver of the privilege against self-incrimination regarding a separate crime a condition of probation. See *State v. Gleason*, 154 Vt. 205, 212, 576 A.2d 1246 (1990). However, a probationer may be required to answer questions concerning matters relevant to probation that pose "no realistic threat of incrimination in a separate criminal proceeding." *Murphy*, 465 U.S. at 435 n.7. To the extent the probationer has lost the privilege against self-incrimination on offenses for

which he or she has been convicted, the probationer must answer, even if his or her answers may be evidence of probation violations and result in revocation. *Arizona v. Eccles*, 179 Ariz. 226, 228, 877 P.2d 799 (1994).

In this case, there was no violation of Lumley's Fifth Amendment protections against self-incrimination. The polygraph question and answer which led to Lumley's revocation referred solely to Lumley's condition of probation that he not be alone with children during the term of his probation. Answering the question truthfully would not have exposed Lumley to prosecution for another crime.

The courts of other jurisdictions are virtually unanimous in approving the requirement of polygraph examinations as a condition of probation. See generally Annot., Propriety of Conditioning Probation on Defendant's Submission to Polygraph or other Lie Detector Testing, 86 A.L.R.4th 709 (1991). Where the jurisdictions disagree, however, is in whether the polygraph examination results are admissible against the probationer in a probation revocation hearing. Compare *People v. Miller*, 208 Cal. App. 3d 1311, 256 Cal. Rptr. 587 (1989) (holding that an order of probation requiring probationer to submit to polygraph testing was not error where the results were not to be used as evidence of a probation violation but to determine whether changes would be necessary in the administration of the probationer's case plan) with *State v. Travis*, 125 Idaho 1, 867 P.2d 234 (1994) (holding that evidence of polygraph results was admissible in a probation revocation hearing as a factor that the court could consider in concluding it was appropriate to revoke the probation of a probationer).

In *Travis*, the Idaho court approved the use of polygraph results as one factor in the trial court's determination to revoke Travis' probation. The *Travis* court noted that the trial court carefully limited its consideration of the polygraph examination. First, the trial court had weighed the evidence and had determined that the results provided an indication that "things may not seem as they are." 125 Idaho at 4. Second, the trial court had not relied exclusively on the polygraph results in revoking probation. The trial

court also had considered Travis' resistance to supervision and his uncooperativeness.

The *Travis* court also considered the effect of Travis' agreement to submit to a polygraph examination as a condition of probation on the admissibility of the results in the revocation proceeding. The court stated: "While Travis's agreement to this condition of his probation might not be sufficient to establish admissibility of the examination results in all circumstances, in the context of a probation revocation proceeding, Travis's agreement is another factor militating in favor of allowing the trial court to exercise its discretion in considering the results of the examination." 125 Idaho at 5.

In *Patton v. State*, 580 N.E.2d 693 (Ind. App. 1992), the Indiana court struck down a probation condition which required Patton to stipulate in advance to the admission in any court proceeding of polygraph results obtained from tests ordered as a condition of his probation. The probation condition in *Patton* was overbroad in that it required Patton to stipulate to the admission of polygraph results in any subsequent court proceeding, not just probation revocation hearings. The court stated:

"In theroy, a defendant who makes the decision to waive or stipulate to the examination's admissibility does so after weighing the questionable accuracy of the examination against the possible benefit to be gained from the examination's admission. Here, however, that decision was made by the court, not Patton. We hold it is inappropriate for a trial court to coerce a defendant to agree to the admissibility of evidence that otherwise would be inadmissible because it has not been found scientifically reliable. Thus, the rehabilitative benefits of the polygraph examination condition must be obtained without the examination results being admissible in any subsequent court proceeding.

"We emphasize we are limiting only the unrestricted admissibility of the polygraph examination results in any subsequent court proceeding, including a trial on a pending or subsequent charge. We impose no impediment upon the use of polygraph examinations as a rehabilitative tool much like the probation condition that a probationer be truthful in responding to questions asked by his or her probation supervisor." 580 N.E.2d at 699.

Probation revocation hearings are not criminal trials, and there are significant differences as to a defendant's rights and the admission of evidence in a criminal trial and a revocation hearing.

We hold that for the offense a probationer was convicted, there is no privilege against self-incrimination available to the probationer, and there is no valid claim of privilege against self-incrimination on the ground that information sought through a polygraph examination might be used in a subsequent probation revocation proceeding.

A condition of probation will not be held invalid unless it (1) has no reasonable relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality. *People v. Lent*, 15 Cal. 3rd 481, 486, 124 Cal. Rptr. 905, 541 P.2d 545 (1975). Proof beyond a reasonable doubt is not required to establish a violation of a condition of probation. Rather, a preponderance of the evidence is sufficient. *Rasler*, 216 Kan. at 295.

Lumley pled guilty to a sex crime committed upon young females. One condition of probation was that he not be alone with young females. As indicated at sentencing, compliance with that condition is difficult to enforce. The polygraph condition helped to monitor compliance and was therefore reasonably related to the defendant's criminal offense. Because this condition was aimed at deterring and discovering criminal conduct most likely to occur during unsupervised contact with young females, the condition was reasonably related to future criminality. The relaxed standard of proof and the fact that a probation revocation decision is a judicial decision rather than a jury decision are additional factors that strongly support a determination that polygraph test results are sufficiently reliable to be considered evidence in probation revocation hearings.

Applying the stated rules for probation and revocation of probation to the instant case, we conclude the polygraph condition was valid.

Affirmed.