NOT DESIGNATED FOR PUBLICATION

Nos. 116,357
116,358
116,359

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA RUND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 15, 2017. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.

PER CURIAM: While on probation, Joshua Rund committed a new crime, was out of county without permission, and used opiates without a prescription. He appeals the district court's revocation of his probation and modification of his sentence without first imposing intermediate sanctions. Because we find that that the district court did not abuse its discretion when it bypassed intermediate sanctions and revoked his probation, we affirm.

1

FACTUAL AND PROCEDURAL HISTORY

In August 2014, Rund entered a plea of guilty to a total of 12 criminal charges in three unrelated Reno County cases all involving either firearms or drugs. As part of the plea agreement, the parties agreed that the State would request the aggravated sentence on each count with the felony sentences to run consecutive within each case and between each case, and the misdemeanors to run concurrent. In exchange for Rund's offered assistance in investigating and prosecuting another case, the State also agreed to recommend a dispositional departure to 36 months of intensive supervised probation with community corrections.

At sentencing, the district court adhered to the provisions of the agreement and sentenced Rund to a total underlying prison term of 263 months. The dispositional departure was granted, and Rund was given 36 months' intensive supervision with community corrections. The district judge told Rund that he already had a long criminal history, "You now have been convicted of serious offenses and as indicated by counsel, basically a sentence that will put you in prison the rest of your life."

Just shy of a year later, the State moved to revoke Rund's probation for continued use of drugs and failing to complete substance abuse treatment. Rund admitted the allegations and waived his right to a hearing. The district judge expressed his concern for Rund when he is using drugs: "[N]ot only do you have a drug problem, you make and sell drugs and most of the time you're armed with a weapon. And there's been far too many people shot and killed in cases that I was involved in . . . ." The district judge stated, "[A]s far as I'm concerned you are doing everything in your power to have me put you in prison [for] the rest of your life." The district judge then imposed a 60-day jail sanction. "I'm trying to convince myself in my mind how that is appropriate . . . with your past record, and I will accede to some issues of [your probation officer] because he says he can still work with you and he sees [a] chance for progress and hope." The judge

2

stated, "[I]t's kind of hard in my mind to convince myself that I shouldn't be leaning towards the other side of the scale." The district judge ordered that Rund's probation would continue under the original terms after he served his 60-day sanction in jail.

Approximately 5 months after his release from jail, Rund's intensive supervision officer (ISO) issued an order for his arrest for: committing a residential burglary and misdemeanor theft in McPherson County; going outside of Reno County without permission; and two separate admissions for using opiates without a prescription. The State filed a motion to revoke Rund's probation based on these allegations.

Later, while the probation revocation motion was pending, the State filed a motion to revoke Rund's bond, alleging that Rund and two other individuals conspired to beat and intimidate a witness who had information regarding the alleged burglary committed by Rund in McPherson County. The witness was allegedly beaten severely by one of Rund's coconspirators, and new criminal charges had been filed against Rund for aggravated battery, aggravated burglary, and aggravated intimidation of a witness. The motion alleged that Rund posed a danger to public safety.

At Rund's probation revocation hearing, two detectives, Rund's ISO, the homeowner, and Rund all testified regarding the allegation that he committed a residential burglary and theft while on probation. Rund admitted the remaining allegations that he used drugs without a prescription and that he was outside Reno County.

The district court found that Rund was out of the county without permission from his ISO, he violated his supervision contract by using opiates without a prescription, he committed a new crime, and he was a danger to society. Rund's assignment to community corrections was revoked, and the district judge imposed a modified sentence of 120

3

months under one of the cases and ordered that all of the underlying sentences, including those in the other two cases, run concurrent.

Rund filed a timely appeal.

ANALYSIS

This court reviews a district court's revocation of probation for an abuse of discretion. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Judicial discretion is abused when the court acts (1) arbitrarily, fancifully, or unreasonably; (2) based on an error of law; or (3) based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). The party asserting error bears the burden of proving an abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

But, K.S.A. 2016 Supp. 22-3716 limits the discretion of district courts when imposing sanctions on defendants who have violated the terms of their probation so that, typically, a district court must impose a series of graduated sanctions before revoking a defendant's probation. See K.S.A. 2016 Supp. 22-3716(c)(1). However, in the event that an offender commits a new crime while on probation or the court finds with particularity that the safety of members of the public will be jeopardized by imposing an intermediate sanction, the district court may revoke the offender's probation and require the offender to serve the underlying sentence, or any lesser sentence as the court sees fit, regardless of whether less severe sanctions have been imposed. K.S.A. 2016 Supp. 22-3716(c)(8)(A), (9).

Rund does not contest the district judge's findings that he violated his probation by abusing drugs or being out of the county without permission, nor does he challenge the district judge's particularized finding that the safety of the public would be jeopardized by

4

Rund's continuation in the community corrections program. Rund contends only that the State did not prove by a preponderance of the evidence that he committed a new crime. See *State v. Lumley*, 267 Kan. 4, 8, 977 P.2d 914 (1999) (preponderance of the evidence standard applies to violations of probation).

At the probation revocation hearing, the district judge made a finding that to continue Rund in community corrections would place the public in jeopardy. The district judge found that Rund's lengthy criminal history, his sale of methamphetamines to others, and his use of firearms in two recent methamphetamines-related cases qualified him as a threat to the safety of the community. Such a finding allows the district court to bypass intermediate sanctions. K.S.A. 2016 Supp. 22-3716(c)(9).

Moreover, Rund did not appeal the district court's findings on this alternative basis. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Further, when a district court provides bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of each alternative basis on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *State v. Novotny*, 297 Kan. 1174, 1180, 307 P.3d 1278 (2013). Accordingly, we can affirm the district court decision on this basis alone.

But we also find that the district court's finding that Rund violated the law by committing a residential burglary and theft in McPherson County while he was on probation was supported by substantial evidence.

To establish Rund committed burglary of a dwelling the State was required to demonstrate by a preponderance of the evidence that Rund entered into a dwelling without authority and with the intent to commit a theft therein. K.S.A. 2016 Supp. 21-5807(a)(1). A preponderance of the evidence is established when the evidence

5

demonstrates a fact is more probably true than not true. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007) (citing *Ortega v. IBP, Inc.*, 255 Kan. 513, 527-28, 874 P.2d 1188 [1994]). This court reviews a district court's findings of fact to determine if they are supported by substantial competent evidence. *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). When reviewing for substantial competent evidence, an appellate court does not reweigh the evidence or pass on the credibility of witnesses. *State v. Combs*, 280 Kan. 45, 50, 118 P.3d 1259 (2005). Further, direct evidence is not necessary to prove intent. "[C]ircumstantial evidence of intent is almost to be expected: 'Intent, a state of mind existing at the time an offense is committed, does not need to be and rarely can be directly proven' through direct evidence. [Citation omitted.]" *State v. Thach*, 305 Kan. 72, 82, 378 P.3d 522 (2016). With those standards firmly in mind, we review the facts as presented at the probation revocation hearing.

On April 20, 2016, it was discovered that a rural home owned by T. Ann Jiminez in McPherson County was burglarized. The crime was reported to 911 by her adult son at approximately 1 p.m. that day. Jiminez was not living there at the time, but her son went by daily to check on the property. Her son had been living in the house in the months prior to the burglary.

The detective who initially responded to the scene noticed that the house was in disarray, but it was in good order and did not look abandoned. Although Jiminez kept her house in good order, when she arrived on April 20, there was furniture in the driveway, other furniture pieces in the house had been opened, dumped out, and even dismantled, and the doors to the house were open. Jiminez noticed items missing from the house.

Entry was made into the house through an antique door on the balcony; a pane of glass was pushed out to allow access. The detective advised the family to place cameras

6

inside and outside of the house because the positioning of the household items—e.g., near doorways—suggested to him that the perpetrators planned to return and take more items. Jiminez testified that she had most of the three-story house put back together by that evening. When they left the house on the 20th, they had installed the cameras, relocked all the doors, and put things in front of the doors to block entry.

Two days later, Jiminez' son went to the house at approximately noon and discovered the house had been broken into again. Jiminez noticed that additional items, such as china, antique dishes, and glassware, were missing from the house after the second burglary. Jiminez testified that she was not "100 percent" sure the dishes hadn't been taken during the first burglary, but "I'm certain of what I own. What I own, where it's at, and when it's there."

Still photographs were retrieved from the motion-activated camera inside the house, taken at approximately 6:30 p.m. on April 21, the evening before the discovery of the second burglary. The images showed a man—later identified by his ISO as Rund—in the living room, and he was wearing gloves. Rund admitted he was inside the house and claimed he was looking for a place to rent that would accommodate his large dogs. He claimed that he was made aware of the house's availability by "just one of the people that lived in the area." He stated he thought the house was empty; the door was unlocked and stuff was thrown around. He denied taking anything from the house. Rund took for granted that the house was the one he had heard about because the yard was overgrown and it looked abandoned. There were no signs indicating that the property was for rent. Rund did not see a "for rent" sign. Jiminez did not know Rund and did not give him permission to enter her house. Rund admitted he did not have permission to go into the house.

Jiminez' son was able to recover a trunk that was taken during the first burglary. He bought it from a woman named Stacy who advertised it on Facebook. Rund had

7

recently opened a business refurbishing, refinishing, and selling antiques with his girlfriend, Stacy.

Rund contends that because the State failed to present evidence refuting his stated purpose for being in the house, it did not meet its burden to demonstrate he committed a new offense in violation of his probation.

Here, the facts of the case were sufficient to establish he committed burglary of a dwelling. Rund was in a home that did not bear a "for rent" sign. The owner did not know him and did not give him permission to be there. Rund could not name the individual who told him the house might be for rent. It was a three-story home with a swimming pool and fully furnished with many antiques, which would clearly be outside of his price range. The house was in a county in which he no longer worked and in which he did not have permission to be. He was curiously wearing gloves inside the home in late April. The house was burglarized one day earlier and left in a state that suggested to law enforcement that the perpetrators would be back. And finally, a trunk taken from the property was sold by a woman with the same name as Rund's girlfriend (Stacy) after the girlfriend and Rund had begun a business selling antiques.

Rund's argument on appeal amounts to a disagreement with the weight the district judge afforded to the testimony of the witnesses and a disagreement with the district judge's credibility determination of Rund's testimony. Mere disagreement does not amount to an abuse of discretion. See *Rojas-Marceleno*, 295 Kan. at 531. The record on appeal supports the district court's finding that a new crime was established by a preponderance of the evidence. Consequently, the district court did not abuse its discretion in revoking Rund's probation rather than imposing a graduated sanction. The record does not demonstrate that the district judge's actions were arbitrary, fanciful, or unreasonable.

8

Affirmed.