[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS
The defendant is charged pursuant to Connecticut General Statute §53a-32 with violating the terms of his probation. Specifically, the State has alleged that the defendant, a convicted sexual offender, refused to submit to a polygraph examination on May 3, 2000 after being ordered to do so by his probation officer. CT Page 1998
The defendant was arrested pursuant to a warrant which was prepared on May 4, 2000 by his probation officer, John D. Satti, and signed by the court (Handy, J.) on May 5, 2000.
On October 11, 2000, the defendant filed a motion to dismiss the information which charged him with the probation violation. A lengthy evidentiary hearing was conducted before this court on diverse dates between January 24, 2001 and August 29, 2001. At the conclusion of the proceeding, both sides were permitted to submit post-hearing memoranda of fact and law. The defendant's counsel subsequently requested and received extensions of the deadline for filing his brief. The State's submission was received on October 11, 2001 and the defendant's memorandum was filed on November 30, 2001.
The court has carefully considered all of the evidence introduced at hearing, and the oral and written arguments of both parties, and makes the following findings of fact.
 FACTUAL FINDINGS
On October 27, 1995, the defendant plead guilty to the crime of Sexual Assault First Degree in violation of Connecticut General Statute §53a-70 (a)(1). Following the defendant's plea, which was entered pursuant to an agreement negotiated with the State's Attorney, the court (Purtill, J.) ordered the Adult Probation Department to prepare a pre-sentence investigation report.
Judge Purtill sentenced the defendant on February 14, 1996. On that date, Judge Purtill imposed a "split sentence" often years incarceration, suspended after three years to serve, and five years probation. The probation portion of the sentence was to commence following the defendant's discharge from the Department of Correction.
At the time of sentencing, Judge Purtill ordered that in addition to the general terms of probation, the defendant was to abide by the recommendations set forth on the last page of the pre-sentence investigation report. Those recommendations included a requirement that the defendant submit to, and fully comply with, specialized sex offender evaluation and treatment, as directed by his probation officer.
The defendant was released from prison under the supervision of the Connecticut Board of Parole on July 27, 1997. As a condition of his parole, the defendant was ordered to submit to sex offender evaluation and treatment at an agency known as the Special Services Forensic Psychophysiology Unit of the Center for Treatment of Problem Sexual CT Page 1999 Behavior, (hereafter "Special Services") in Middletown. Special Services is a private concern which contracts with Connecticut's probation and parole agencies to treat and help supervise convicted sex offenders. While on parole, the defendant was ordered to submit to a polygraph examination conducted by George Brown, a therapist and polygraph examiner at Special Services.
That examination was administered on February 27, 1998. After the test, Brown confronted the defendant about two areas of questioning where Brown alleged that the defendant had been deceptive during the exam.
In answers to questions posed by Brown during the polygraph examination, the defendant denied that he had used illegal drugs since his discharge from prison, and maintained that he had been fully candid in discussing the details of his crime during a group therapy session at Special Services. However, during the post-test interview with Brown, the defendant stated that he had inhaled nitrous oxide, and that he had not revealed all of the details of his offense during group therapy. The defendant's parole status was not revoked as a result of those admissions.
The February 27, 1998 polygraph examination, and Brown's post-test interview with the defendant, were both videotaped. That videotape was shown to the court, and admitted into evidence, during this proceeding.
On January 22, 1999, the defendant's parole ended, and he was officially discharged from the custody of the Department of Correction. The defendant began serving the probationary portion of his sentence on January 22, 1999 and signed conditions of probation on that date (Defendant's Exhibit 10). The probation form which the defendant signed listed "court ordered special conditions" of probation, which included requirements of sex offender evaluation and treatment and psychiatric-psychological evaluation and treatment. (Defendant's Exhibit 10). Under the heading "Probation Officer Ordered Conditions" was the notation: "See Sex Offender Unit Conditions." (Defendant's Exhibit 10). One of the conditions of sex offender treatment was a requirement that the defendant participate in periodic polygraph examinations for purposes of risk management.
During February 2000, the defendant was ordered by Probation Officer Satti to undergo a polygraph examination administered by Special Services. The examination was ultimately scheduled for May 3, 2000 at the Adult Probation office in New London. Brown, the Special Services employee who administered the 1998 polygraph test to the defendant, was assigned to conduct this examination. CT Page 2000
The defendant arrived at the probation office at the appointed time on May 3rd He paid the testing fee and met with Brown.
Prior to commencement of the examination, the defendant was requested by Brown to sign a liability waiver form which read in part:
 "I am fully aware that Mr. Brown's opinion may be that I have not been truthful. Not withstanding such, in consideration of and as inducement for the PPD examiner to give me this PPD examination, I — for myself and my successors, assigns, heirs, covenant, promise, agree to save harmless, forever discharge and hold free from all harm, liability or damage to me, the PPD examiner, and I remise, release, waive and forever discharge each and all of the above-named from any and all suits, actions or causes of actions at law, claim demand, or liability either in law or in equity, including but not limited to false arrest, false imprisonment, slander or invasion of all my rights which I, my successors, assigns, heirs, executors or administrators have now or may have, resulting directly, indirectly or remotely from my taking said examination, possible liability or damage from the operation of all electronic hearing and recording devices, the rendered oral and written statements, and/or future actions taken by the above based upon the examination. " (Defendant's Exhibit 13a).
Dr. Dennis Gibeau, the Clinical Director at Special Services, testified credibly that his agency developed the foregoing liability waiver form as part of its "protocol" in connection with the polygraph examination administered to sexual offenders. He indicated that everyone taking the examination is required to sign this waiver, and that his agency will refuse to administer a polygraph test to anyone who declines to execute the form. Although the waiver was requested by Special Services, Chief Probation Officer Robert Coyne acknowledged that the defendant was not required to sign the waiver form as a condition of his probation.[1]
Brown testified credibly at hearing that the defendant expressed concern about the language in the waiver form when he was asked to sign it on May 3, 2000. The defendant indicated that he wanted an attorney to review the forms, and subsequently left the probation office without taking the polygraph examination.
On the following day, Satti submitted a warrant for the defendant's CT Page 2001 arrest on the violation of probation charge. The defendant's alleged refusal to submit to the polygraph examination on May 3, 2000 is the only violation claimed in the warrant affidavit.
 DISCUSSION
The defendant wages a multi-pronged attack on the validity of his arrest in the motion to dismiss. His first claim is that there is insufficient evidence or cause to justify bringing or continuing the information, or placing him on trial. He advances four separate reasons supporting his argument of insufficient evidence or cause.
First, the defendant maintains that polygraph testing was not a condition of probation ordered by the sentencing court when the defendant was sentenced.
Secondly, in a related claim, the defendant contends that polygraph examinations were not given as part of the Probation Department's sex offender treatment protocol at the time when the defendant was sentenced. Therefore, the defendant contends that the polygraph condition cannot be a lawful requirement of his probation status.
Thirdly, the defendant asserts in his motion to dismiss that "[e]ven if Probation can add additional conditions to probation, this condition, namely, taking a polygraph, is an inappropriate condition because the stated purpose for its use and the test itself is not a valid test for the purpose for which it is being used and/or, in fact, the polygraph, due to the inaccuracy, has no legitimate purpose to the probationary process."
Finally, the defendant claims that "[e]ven if it is found that polygraph exams were part of the sexual offender treatment when the defendant was sentenced, that condition was inappropriate and/or, in fact the polygraph, due to its inaccuracy, has no legitimate purpose to the probationary process."
The court will first address the claims that the sentencing court did not impose polygraph testing as a condition of probation, and that polygraph examinations were not part of the Probation Department's sexual offender treatment protocol on the date when the defendant was sentenced.
Per Connecticut General Statute § 53a-30 (a), the trial court may order a defendant to comply with the various conditions of probation in order to facilitate the offender's rehabilitation, and to protect the community. These may include requirements that a defendant undergo CT Page 2002 specialized sex offender treatment, and satisfy other conditions reasonably related to his or her rehabilitation.
C.G.S. § 53a-30 (b) authorizes probation officials to require a defendant to comply "with any or all conditions which the court could have imposed . . . which are not inconsistent with any condition actually imposed by the court."
Connecticut's Supreme Court has indicated that C.G.S. § 53a-30 (b) allows either the judge or the Probation Department to impose reasonable conditions of probation, and that such an imposition is not an illegal delegation of the judicial function. State v. Roberson 165 Conn. 73,327 A.2d 556 (1973). See also: State v. Fussenich, 50 Conn. App. 187,717 A.2d 801, cert. denied, 247 Conn. 956, 723 A.2d 814, cert. denied,527 U.S. 1004, 120 S.Ct. 500, 145 L.Ed. 386 (1999); State v. Cooley,3 Conn. App. 410, 411 N.2, 488 A.2d 1283, cert. denied, 196 Conn. 805,492 A.2d 1241 (1985).
Probation conditions serve two primary purposes. "[T]hey are meant to assure that the probation served as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted). State v. Graham,33 Conn. App. 432, 448, 363 A.2d 852, cert. denied, 229 Conn. 906,640 A.2d 117 (1994).
Although Judge Purtill did not specifically order that the defendant comply with polygraph testing, Connecticut's statutory and common law is clear that probation officials may impose additional conditions in order to effectuate legitimate objectives of probation. "In accepting probation, the defendant accepted at the time of sentencing the possibility that the terms of his probation could be modified or enlarged in the future in accordance with the statutes governing probation. " Statev. Thorp, 57 Conn. App. 112, 121, 747 A.2d 537, 542 (2000).
In Thorp, the Appellate Court determined that probation officials were permitted by C.G.S. § 53a-30 (b) to require a probationer convicted of sexual assault to receive sex offender evaluation and treatment, even though such a condition had not been imposed by the judge at the time of sentencing. The court also held the Probation Department ". . . was not required by § 53a-30 (b) to request a hearing and court approval of the additional condition . . ." State v. Thorp, supra, 119.
Accordingly, in the case at bar, the probation officer was authorized by § 53a-30 (b) to require polygraph testing, provided that order was not inconsistent with the orders actually entered by Judge Purtill at the time of sentencing. CT Page 2003
"[I]n determining whether a condition of probation [is proper] a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [P]robation Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Internal quotation marks omitted, internal citations omitted). State v. Thorp, supra, 117.
Judge Purtill's order encompassed the requirement that the defendant undergo specialized sex offender evaluation and treatment. When the defendant's probation began in January, 1999, he was ordered by probation to participate in and complete any sex offender evaluation and treatment recommended for him. He was also ordered by probation at that time to participate in periodic polygraph examinations for purposes of risk management.
At hearing, Dr. Gibeau of Special Services testified that since 1996, his agency has worked with probation to provide a comprehensive program of supervision for convicted sex offenders on probation. The protocol employed by the two agencies is known as a "containment model." Polygraph examinations are utilized in the containment model approach to monitor a sex offenders' compliance with the conditions of his probation and treatment.
Dr. Gibeau testified credibly that when a sexual offender tests positive for deception during a polygraph examination, that information is shared with the probationer's therapist and probation officer. Alterations in the probationer's conditions, such as increased reporting and increased or modified restrictions, are frequently made. The issue identified is also addressed in the offender's therapy.
Special Services has employed polygraph testing as part of this containment model since 1996. There have been no long-term statistical studies conducted by Special Services which demonstrate the effectiveness of the polygraph machine's use in the containment model. However, Gibeau stated that it was his experience that polygraph testing enables his agency and probation to learn about the "high-risk behaviors" of some offenders earlier in the probation process. Gibeau also believes that "on a short-term basis," polygraph testing has had a positive impact on the probationers his agency has supervised. Gibeau believes that the usefulness of polygraph testing is reflected in the increased frequency with which probationers have admitted to problem behavior that could lead CT Page 2004 to recidivism. Gibeau testified that use of the polygraph machine in the containment model approach has resulted in a decrease in technical violations of probation, and in an increase in the discovery of specific violations of probation.
Coyne, the chief probation officer in the New London Judicial District, testified that polygraph testing is a "useful tool" in monitoring the behavior of sexual offenders on probation. He indicated that the results of polygraph examinations are used to alter the case management plans for the convicted sexual offenders whom probation supervises.
The court found the testimony of Gibeau and Coyne about the probation-related purposes of polygraph testing to be credible, and accepts it as fact.
During the hearing the defendant introduced extensive evidence (which will be discussed at length below) that the polygraph machine is unreliable, and therefore should not be employed in the penological process. Because of the polygraph's inherent unreliability, the defendant asserts that the information against him should be dismissed for insufficient evidence or cause.
The court has carefully considered all the evidence and arguments advanced by the defendant in support of this claim. However, the court finds that polygraph testing plays a legitimate role in the probation supervision of convicted sexual offenders such as the defendant. The court bases this finding on the credible testimony of Coyne and Gibeau, and upon the evidence pertaining to the defendant's earlier polygraph examination, when he admitted problem behavior (e.g., using nitrous oxide) and conduct antithetical to his rehabilitation (e.g., a lack of candor in his group sexual offender therapy session). The court also notes the evidence at hearing which established that Connecticut is one of 33 states which employs polygraph testing in the post-conviction supervision of offenders who are on probation.
The purpose of probation in this case was to assist the defendant's reformation, and to safeguard the community by inhibiting him from committing future offenses. Because polygraph examinations can advance those ends by helping to monitor the defendant's conduct and possibly deter future wrongdoing, it has a valid and reasonable relationship to the legitimate purposes of his probation. Accordingly, the court finds that polygraph testing is a condition which Judge Purtill could have imposed at the time of the defendant's sentencing. Therefore, pursuant to C.G.S. § 53-30 (b), this court finds that probation had the statutory authority to require the defendant to comply with such testing. CT Page 2005
The defendant has also claimed that because he was convicted in 1995, and probation did not begin polygraph testing until 1996, such a condition is invalid. The court finds this argument to be unpersuasive.
A person is placed on probation for a period of time during which it is hoped that he or she will be rehabilitated and society will be protected. Because the needs of the probationer and/or society can change during that period, and because new methods of treatment and supervision can be developed, probation is, of necessity, a somewhat fluid status. C.G.S. § 53a-30 (b) recognizes that dynamic by authorizing probation to add such conditions which the court could have imposed and which are not inconsistent with any condition actually imposed by the sentencing court. Here, the defendant has not proven that the trial court could not have ordered the defendant to answer questions asked during a lie detector test, or be subjected to more rigorous supervision, on the date of sentencing.
Because this court finds that the condition of polygraph testing was reasonably related to the purposes of the defendant's probation, and could have been ordered when the trial court issued its sentence, the defendant's first two claims for dismissal based on insufficiency of evidence or cause must fail.
The defendant also contends that polygraph examinations are scientifically unreliable and inaccurate tests which have been rejected by the Connecticut Supreme Court. He argues that due to their inherent unreliability, polygraph tests should have no place "in Connecticut's legal, penal or rehabilitative system." For that reason, the defendant asserts that his motion for dismissal due to insufficiency of evidence or cause should be granted.
The defendant's argument is based, in part, on our Supreme Court's decision in the case of State v. Porter, 241 Conn. 57, 698 A.2d 739
(1997). In Porter the Supreme Court conducted a comprehensive assessment of available scientific data to determine the likely probative value of polygraph evidence. The Court noted:
"After reviewing the case law, and the current, extensive literature on the polygraph test . . . we are convinced that the prejudicial impact of polygraph evidence greatly exceeds its probative value. Accordingly, we see no reason to abandon our well-established rule of exclusion, and we conclude that polygraph evidence should remain per se inadmissible in all trial court proceedings in which CT Page 2006 the rules of evidence apply, and for all trial purposes in Connecticut courts." (Footnotes omitted). State v. Porter, supra 93-94.
In addition to citing State v. Porter, the defendant introduced the testimony of Leonard Saxe, Ph.D., a research psychologist who has engaged in extensive study of the scientific reliability of polygraph testing. Dr. Saxe, who serves on the faculty at Brandeis University, was the principal author of a 1983 study on the scientific validity of polygraph examinations for the U.S. Congress' Office of Technology Assessment.
Dr. Saxe opined that available scientific evidence does not establish the reliability of polygraph machines in detecting deception.
In Dr. Saxe's opinion, although polygraph testing can accurately measure a subject's physiological responses when he or she is asked a particular question, there is no physiological response which uniquely indicates a lie. Dr. Saxe concludes that while the polygraph machine can measure the changes in a subject's pulse, breathing and perspiration, those physiological responses are not reliable indicators of whether or not the person being questioned is telling the truth.
Dr. Saxe also believes that the polygraph machine is unreliable in monitoring the post-conviction compliance of offenders with the terms of their release.
Dr. Saxe indicated during his testimony that the polygraph machine can have a "placebo effect" on some offenders who believe that the machine can accurately determine whether or not they are telling the truth. Per Dr. Saxe, this placebo effect could possibly have a deterrent impact on subjects who are aware that they may be subjected to polygraph testing and fear detection if they lie. Dr. Saxe opined that the polygraph would not have a placebo effect upon the defendant. Dr. Saxe reached this conclusion because he believes that the defendant now doubts the reliability of the polygraph examination and does not believe that it can accurately determine deception.
Having considered all of the evidence, the court does not find the defendant's citation of the Porter decision, or Dr. Saxe's testimony concerning the reliability of polygraph testing, to be grounds for dismissal in this case.
While State v. Porter barred polygraph exam results from evidence in Connecticut's trial proceedings, it did not proscribe the use of polygraph testing in criminal investigations, or in connection with the supervision of convicted offenders on probation or parole. CT Page 2007
In the present case, there has been no attempt to introduce polygraph test results into evidence at a probation revocation hearing. No polygraph examination was ever administered to the defendant while he was on probation. The only ground alleged for the revocation of his probation was the defendant's purported refusal to be tested on May 3, 2000.
Probation officers are charged with the duty of supervising convicted offenders in the community. They are mandated by statute to ". . . keep informed of [the probationer's] conduct and condition and use all suitable methods to aid and encourage him and to bring about improvement in his conduct and condition. C.G.S. § 54-108.
Implicit in the foregoing statutory charge is the requirement that probation officers meet with their charges and ask them questions about their adjustment, activities and compliance with the terms of their probation. The evidence at hearing established that the probation department and Special Services employ the polygraph for precisely that type of inquiry. The Court finds little distinction between questioning by a probation officer, or an inquiry conducted by Special Services representatives during a polygraph examination.
Credible evidence at hearing established that polygraph examinations further the rehabilitative purposes of probation. As noted above, Gibeau and Coyne testified credibly that changes in an offender's conditions of probation and restrictions are sometimes made based upon testing results which indicate deception, or an admission of wrongdoing. Early intervention with a subject who is engaging in risky behavior can prevent recidivism and protect the community. Gibeau's experience indicated that there was a correlation between the polygraph testing and an earlier detection of problem behavior. This resulted in a reduction in the number of technical violations of probation among the offenders whom Special Services supervises.
Furthermore, it was established by the evidence presented that the use of polygraph testing has a deterrent impact on certain offenders. The court bases this finding on the testimony of Dr. Gibeau, the evidence about the so-called "placebo effect" introduced during Dr. Saxe's testimony, and the court's observations of the videotaped admissions which the defendant made following the 1998 polygraph examination.[2]
The court finds that polygraph testing furthers the legitimate purposes of the defendant's probation because it has valid rehabilitative and deterrent purposes. For this reason, the court finds the polygraph machine to be a suitable tool which may be utilized by the probation authority to supervise sexual offenders. Because of this, the court CT Page 2008 further finds that the Porter decision, and the defendant's evidence concerning unreliability, are not appropriate grounds for dismissal due to insufficiency of evidence or cause.
In addition to all of the aforementioned reasons, there is one additional consideration which leads the court to deny the defendant's Motion to Dismiss on the basis of insufficient evidence or cause.
The defendant's motion does not state the specific statutory or practice book section on which the defendant relies in seeking a dismissal for insufficient evidence or cause.
Connecticut Practice Book § 41-8 authorizes the Court to dismiss a criminal information without trial for several reasons. Per Connecticut Practice Book § 41-8(5), the Court may grant a dismissal if it finds "insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial."
However, Connecticut Practice Book § 41-9 mandates that a defendant arrested pursuant to a warrant may not make a motion for dismissal under § 41-8 (5).
In the case at bar, the defendant was arrested on a warrant signed by Judge Susan Handy. Hence, a motion for dismissal brought under Connecticut Practice Book § 41-8 (5) is barred by Connecticut Practice Book § 41-9. this reason, the court finds the polygraph machine to be a suitable tool which may be utilized by the probation authority to supervise sexual offenders. Because of this, the court further finds that the Porter decision, and the defendant's evidence concerning unreliability, are not appropriate grounds for dismissal due to insufficiency of evidence or cause.
In addition to all of the aforementioned reasons, there is one additional consideration which leads the court to deny the defendant's Motion to Dismiss on the basis of insufficient evidence or cause.
The defendant's motion does not state the specific statutory or practice book section on which the defendant relies in seeking a dismissal for insufficient evidence or cause.
Connecticut Practice Book § 41-8 authorizes the Court to dismiss a criminal information without trial for several reasons. Per Connecticut Practice Book § 41-8(5), the Court may grant a dismissal if it finds "insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial." CT Page 2009
However, Connecticut Practice Book § 41-9 mandates that a defendant arrested pursuant to a warrant may not make a motion for dismissal under § 41-8 (5).
In the case at bar, the defendant was arrested on a warrant signed by Judge Susan Handy. Hence, a motion for dismissal brought under Connecticut Practice Book § 41-8 (5) is barred by Connecticut Practice Book § 41-9.
Connecticut General Statute § 54-56 also authorizes the court to grant dismissals in criminal cases. Its language does not preclude the court from granting a motion based on insufficiency of evidence or cause where there has been an arrest by warrant. C.G.S. § 54-56 states as follows:
 "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations in criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged, if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."
However, in State v. Dills, 19 Conn. App. 495, 503, 563 A.2d 733, 737
(1989) our Appellate Court ruled that ". . . the insufficient cause prong of [§ 54-56] is an inappropriate basis for dismissal of an information preceded by an arrest warrant."
Although this Court received extensive evidence during the lengthy hearing on defendant's Motion to Dismiss, the probation revocation hearing in this matter has yet to be held. Given that fact, and the fact that the defendant was arrested by warrant, the court finds that the defendant's Motion for Dismissal based on insufficiency of evidence or cause is barred by Connecticut Practice Book § 41-9, and by our Appellate Court's interpretation of Connecticut General Statute § 54-56
in State v. Dills, supra.
The second ground in the defendant's Motion to Dismiss is a claim that the law defining the offense with which he has been charged is unconstitutional or otherwise invalid.
The defendant is charged with violation of probation pursuant to Connecticut General Statute § 53-32. That statute reads in part:
CT Page 2010 "At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation. . . ."
The defendant did not establish during this hearing how C.G.S. §53a-32 is unconstitutional or defective. That claim was not briefed in his post-trial memorandum and, hence, must be considered abandoned. Accordingly, the defendant's Motion to Dismiss based on that wound is denied.
The defendant's third wound for dismissal is predicated on his claim that there is a defect in the charging documents, including the failure to charge an offense.
As noted above, the defendant is charged in an information with a violation of probation, under the provisions of Connecticut General Statute § 53a-32, supra. The defendant was arrested pursuant to a warrant signed by the court. In a six-page warrant affidavit, the probation officer alleged that the defendant was required to submit to a polygraph examination as a condition of his probation, and failed to comply with an order that he be tested on May 3 2000.
Although the defendant has vigorously attacked the validity of that probation requirement, and the reliability of polygraph examinations, he has not established here that the charging document is defective or fails to charge an offense. Therefore, his motion for dismissal on that ground is denied.
In his fourth ground for dismissal, the defendant contends that polygraph testing violates his constitutional rights.
The defendant's claim is based on the privilege against self incrimination which is afforded by the Fifth Amendment to the U.S. Constitution, and by Article 1, Section 8 of the Connecticut Constitution.
The defendant maintains that his constitutional right against self incrimination will be violated if he is required to submit to a polygraph examination.
The United States Supreme Court has held that "where there can be no further incrimination, there is no basis for the assertion of the privilege . . . [T]hat principal applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason CT Page 2011 of further testimony, then there is no further incrimination to be feared." (Internal citation omitted). Mitchell v. United States,526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). From the foregoing, it follows that a probationer has lost the privilege against self incrimination in relationship to crimes for which he has been convicted and may be compelled to answer questions related to that offense as a condition of his probation. See State v. Lumley, 977 P.2d 914,919 (Kan. 1999); Arizona v. Eckels, 179 Ariz. 226, 877 P.2d 779 (1994).
"A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self executing privilege." Minnesota v. Murphy,465 U.S. 420, 435, 104 S.Ct. 1136, 79 L.Ed 2d 409 (1984).
In Minnesota v. Murphy, the U.S. Supreme Court held that a defendant cannot be compelled as a condition of his probation to answer questions that could be used against him if he was tried for another crime. However, the Supreme Court also ruled in that case that theFifth Amendment privilege against self-incrimination cannot be invoked by a probationer who is questioned about the terms of his probation. The Supreme Court noted: "Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential question could not validly rest on the ground that the answer might be used to incriminate if the probationer was fried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. " Minnesota v. Murphy, supra, 435 n. 7. (See also Arizona v. Eckels, supra, 228, and State v. Lumley, supra, 919)
The U.S. Supreme Court also found in the Murphy case that "the general obligation to appear and answer questions truthfully [to a probation officer] did not convert [a probationer's] voluntary statement into a compelled one." Minnesota v. Murphy, supra, 427.
The court concludes from the cases cited above that the questioning of an offender about the conditions of his probation by the authorities charged with his supervision is not, per se, unconstitutional.
Furthermore, in this case, the defendant's claim of a constitutional violation is not factually supported.
The polygraph examination was not conducted on May 3, 2000. The defendant was not questioned, and he left the probation offices of his own volition. The defendant never invoked or otherwise asserted his privilege against self-incrimination. The defendant's constitutional CT Page 2012 argument in this case is predicated solely on concerns about what he might be asked, or what he might say, if he submitted to a polygraph examination.
The court finds that no constitutional right was implicated, and that the defendant's self incrimination argument is based on speculation. In the absence of any facts indicating an actual violation of the defendant's constitutional right against self-incrimination, this ground for dismissal must also fail.
In his November 6, 2000 memorandum in support of the motion to dismiss, the defendant argued that the "[t]he court should not revoke the defendant's probation because the state has failed to show that the benefits of probation ceased as a result of the defendant's failure to submit to a polygraph."
This ground is inappropriate for consideration in a hearing on a Motion to Dismiss.
As the defendant correctly noted in his brief, a probation hearing has two distinct phases: (1) the court must first determine by a fair preponderance of the evidence if the defendant violated a condition of his probation and (2) if the court finds a violation it must next determine whether the defendant's probation should be continued or revoked. Statev. Davis, 229 Conn. 285, 641 A.2d 370 (1995). In making the latter determination, the court must consider if the defendant needs to be incarcerated because the rehabilitative purposes of probation can no longer be met.
In the case at bar, the probation revocation hearing has yet to be held. Accordingly, this claim is premature, and is therefore denied.
The defendant has also moved for dismissal based on the argument that Special Services prevented him from submitting to the polygraph examination on May 3, 2000 by insisting that he sign a waiver of liability as a condition precedent to taking the test.
As noted above, the requirement that the defendant sign a general waiver of liability before he took the test was not a condition of his probation. The waiver was a requirement unilaterally mandated by Special Services. The evidence at hearing was uncontroverted that Special Services would not have administered the polygraph examination to the defendant unless he signed the waiver on May 3.
Based on the foregoing, the defendant claims that he did not refuse the test. Instead, he contends that he was prevented from taking the CT Page 2013 polygraph examination because he would not sign the waiver required by Special Services. Since signing the waiver was not a condition of his probation, the defendant argues that Special Services' insistence that he execute one prevented him from complying with the testing requirement.
The State, noting that the defendant signed a similar liability waiver when he took the polygraph examination at the direction of Parole in 1998, claims that the defendant raises this issue as a pretext. The State notes that the defendant did not express concern about the language contained in the waiver during the three months which transpired after he was notified in February that he was to undergo polygraph examination in May.
Here, too, the defendant has not specified in his Motion to Dismiss the specific statutory or practice book section which authorizes him to raise this ground in a motion to dismiss.
Based on its review of the applicable statutory and practice book sections, the court presumes that the defendant's claim relies on one or more of the following grounds:
 1. Insufficiency of evidence or cause, per Connecticut Practice Book § 41-8(b) and/or Connecticut General Statutes § 54-56;
 2. Defects in the information including failure to charge an offense, per Connecticut Practice Book § 41-8(2);
 3. "Other grounds" per Connecticut Practice Book § 41-8(9).
As noted above, Connecticut Practice Book § 41-9 precludes motions for dismissal based on insufficiency of evidence or cause, or on "other grounds," where, as here, the arrest of the defendant was by warrant. Similarly, the ruling in State v. Dills, supra, indicates that the court should not grant a motion to dismiss for insufficiency of evidence or cause where the defendant's arrest was preceded by the issuance of a warrant.
Furthermore, the court finds that although the liability waiver issue may constitute a possible defense to the probation violation charge, it does not render the information defective, or support a legal finding that the information is devoid of a chargeable offense.
The court will not rule on the validity of that defense here. The court CT Page 2014 finds, however, based on Connecticut Practice Book § 41-9 and Statev. Dills, supra, that it is not a permissible ground for dismissal in this hearing on the defendant's Motion to Dismiss.
 ORDER
The court finds, as a matter of fact and law, that the defendant has not proven any of the grounds for dismissal which were alleged in his motion, or subsequently developed at hearing. Accordingly, his Motion to Dismiss is hereby DENIED.
By the court:
Dyer, J.